ELLSWORTH v. LUDWIG, EXECUTRIX, ETC.

[No. 20,117. Filed November 1, 1967.]

*Bernard S. Schrager, Max Buntman,* and *George S. Keller,* all of South Bend, for appellant.

*William E. Mills* and *R. Kent Rowe,* of South Bend, for appellee.

DISSENTING OPINION

ARTERBURN, J.—This case comes to us on petition to transfer. (See opinion of Appellate Court as reported in 223 N. E. 2d 764.) [140 Ind. App. 437]

This is an action by the appellant (plaintiff below) for personal injuries arising out of a truck collision. A jury trial resulted in a verdict in favor of the appellant in the amount of $90,000.00. The trial court granted a motion for a new trial, from which the appellant appealed. Cross errors were also assigned.

The trial court gave a number of reasons stated in the record for sustaining the motion for a new trial, which we will discuss at a later point in this opinion. The facts are recited in the Appellate Court opinion and set forth also in the brief on transfer, which is not contradicted, and are briefly:

"It appears from the record that appellant's husband, Kenneth Ellsworth, was well known in the community for his ability to consume alcoholic beverages, and he was known to exhibit this proclivity during working hours at his place of employment. Kenneth was employed as a truck driver by Le Roy Ludwig, the defendant-appellee. The defendant, now deceased, did business under the name of 'Service Coal Company' in Elkhart, Indiana. Decedent's wife, Alma Ludwig (as executrix), was substituted as party defendant by the trial court.

"On September 9, 1958, Kenneth Ellsworth telephoned his employer from a tavern and asked for permission to drive the company truck to his home. When he approached his house about 4:30 p.m., his wife was sitting in the yard. Kenneth drove into the yard, over his wife and crashed into the house.

"The plaintiff-appellant suffered severe injuries which resulted in the amputation of her left leg above the knee, and she sued in the court below for $200,000.00 damages."

Appellee (defendant) urges that the wife in this case cannot bring an action against her husband's employer (the defendant in this case, who has since died) because "there can

be no liability of the master for a judgment if there is none against the employee."

However, an agency relationship does not exist in this case because at the time of the accident, the appellant's husband was not driving the truck in the course of his employment. The appellant alleges that the appellee-Ludwig committed a separate act of negligence which was the proximate cause of the injury of which she complains, namely, that the appellee negligently entrusted the truck to an unfit or incompetent driver. There is no legal significance to be attached to the fact that involved in the chain of events there is a person who was appellee-Ludwig's employee and also the appellant's husband.

The question before us, then, is the issue of negligent entrustment of a motor vehicle. We are asked to review this law and in that connection the expressions found in the case of *Fisher* v. *Fletcher* (1922), 191 Ind. 529, 133 N. E. 834. In that case the complaint alleged that a chauffeur was permitted to drive an automobile owned by the defendant-appellee and

". . . that the appellee knew that the said Clemens was in the habit of drinking intoxicating liquors to excess, and of becoming intoxicated when he was released from his regular work as aforesaid; that he knew that at said times the said Clemens was in the habit of using appellee's said automobile while intoxicated, and that the appellee negligently consented to such use by the said Clemens while he was in his employ; that appellee knew that the said Clemens was a wild and reckless driver of his said automobile, and would run the same, when in his charge, at a high, dangerous and unlawful rate of speed; that he knew that the said Clemens had been arrested, convicted and fined for driving said automobile in such a manner while in his employ; . . ."

This Court affirmed a judgment sustaining a demurrer to the complaint in the case and stated:

"But it does not appear that the said Clemens was put in possession of the automobile *when* he was intoxicated or otherwise unable to exercise care in using it." (Our italics)

In the case at bar the appellant alleged in the second amended complaint:

> "The defendant's decedent entrusted the truck to Ellsworth when Ellsworth was under the influence of intoxicating liquor and when the defendant's decedent knew or should have known that Ellsworth was under the influence of intoxicating liquor and that Ellsworth, being under the influence of intoxicating liquor, caused plaintiff's injuries."

The Appellate Court, on the basis of *Fisher* v. *Fletcher, supra,* held the allegation bad, and said: "In order to recover against the owner-bailor of a car, the borrower-bailee must be drunk at the very moment of entrustment and the bailor must have *actual* and *immediate knowledge* of this act." (Our italics) The language used in that case is too restrictive as to liability. It holds there must be *actual* knowledge of the incompetency as a basis of liability under the theory of that case. We find, however, that the principle of liability that exists under negligent entrustment is somewhat broader and is properly stated in Restatement of The Law, Torts 2, sec. 390, which reads as follows:

> *"Chattel for Use by Person Known to be Incompetent.*
> "One who supplies directly or through a third person a chattel for the use of another whom the supplier knows, *or has reason to know,* to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them." (Our italics)

The illustrations given following the above statement say that a loaded gun placed in the hands of a feeble-minded ten year old girl; or a motor car given to a ten year old boy to drive on the highway; or an automobile given to a person to be driven, knowing that he is an habitual drunkard, constitutes actionable negligence. It follows that one who supplies an automobile or chattel for the use of another, even though the property is in good and safe condition, is not entitled to

assume that it will be used safely, if the bailor or supplier knows or has reason to know that such other person to whom it is given is likely to use it dangerously, especially where the other belongs to a class or group which is notoriously incompetent to use the chattel safely or lacks the training and experience necessary for such safe use.

Many cases are cited from various jurisdictions in support of the above principle of law in the Appendix to the Restatement of The Law under Sec. 390 above. These annotations are in point and most of them involve the bailment of an automobile where the owner or bailor knew or ought to have known the driver was drunk or an habitual drunkard or otherwise incompetent in the operation of the automobile. *Department of Water & Power* v. *Anderson* (1938), 95 F. 2d 577 [C.A. 9], cert. den. 305 U. S. 607, 83 L. Ed. 386, 59 S. Ct. 67; *Buchanan Contracting Co.* v. *Denson* (1955), 262 Ala. 592, 80 So. 2d 614; *Johnson* v. *Casetta* (1961), 197 Cal. App. 2d 272, 17 Cal. Rep. 81; *Blakey* v. *Zirkle* (1961), 187 Kan. 562, 358 P. 2d 758; *Rounds* v. *Phillips* (1934), 166 Md. 151, 170 Atl. 532; *Richton Tie & Timber Co* v. *Smith* (1950), 210 Miss. 148, 48 So. 2d 618; *Dinger* v. *Burnham* (1950), 228 S. W. 2d 696; *Sadler* v. *Draper* (1959), 46 Tenn. App. 1, 326 S. W. 2d 148.

See also: *Northside Chevrolet Inc.* v. *Clark* (1940), 107 Ind. App. 592, 25 N. E. 2d 1011; *Ellsworth Freight Lines, Inc.* v. *Oren E. Coney,* 376 F. 2d 475 (Ind. 7th cir. May 1, 1967) ; *Snowwhite* v. *State,* 221 A. 2d 342 (Md. 1966) ; *Breeding* v. *Massey,* 378 F. 2d 171 (8th cir. June 5, 1967).

Liability exists not only where the bailor has actual, immediate knowledge of the incapacity of the person to safely handle the automobile or chattel, but also where the owner "has reason to know" or reasonably ought to know under the circumstances of the incapacity of the driver.

Liability and responsibility for negligence as a result of knowledge comprehends not only what one actually knows but

*what one reasonably ought to know under the circumstances.*
The law will not permit voluntary or willful ignorance of a
fact to excuse liability. It has been said:

> "The foundation of liability is knowledge, or what is deemed
> in law to be the same thing, namely, the opportunity by the
> exercise of reasonable diligence to acquire knowledge of
> peril which subsequently results in injury. One under a duty
> to use care for which knowledge is necessary cannot escape
> liability for negligence because of voluntary ignorance, and
> where a situation suggests investigation and inspection in
> order that its dangers may fully appear, the duty to make
> such investigation and inspection is imposed.

> "The governing consideration as to the knowledge or notice
> of danger required for a showing of negligence is that in
> determining whether or not an act or omission is negligent,
> the question must depend on whether an injury of some kind
> to some person could have been reasonably expected to re-
> sult from such act or omission.

> "It is well settled that reasonable care requires a person to
> anticipate and guard against what usually happens or is
> likely to happen, and that a failure to do this is negligence,
> . . ." 21 I.L.E., Negilgence, Sec. 4, pp. 266, 267; *Northside
> Chevrolet, Inc.* v. *Clark* (1940), 107 Ind. App. 592, 25 N. E.
> 2d 101; *Opple* v. *Ray* (1935), 208 Ind. 450, 195 N. E. 2d 81.

For example, if a driver's license has been suspended or re-
jected because of intoxication, it would be relevant to show
that at the time of the accident the driver was in the employ
of the defendant and was operating a truck for the defendant-
appellee and that the defendant knew or should have known
that he was legally disqualified from operating a motor vehicle.
*Fisher* v. *Fletcher, supra,* we recognize, did not go that far.
The court in that case attempted to resolve the issues merely
upon the statement that an automobile is not a dangerous
instrumentality. Nearly forty-five years have elapsed since
that decision. We do not believe that the question can be
resolved merely by saying an automobile is not a "dangerous
instrumentality," although there are some who may dispute
such classification in this day and age. A chattel which is not
inherently dangerous or deadly, when placed in the hands of an

incompetent person may become dangerous and deadly, just as an instrument which is harmless in itself may, in the manner used, become a dangerous and deadly weapon.

In *Repczynski* v. *Mikulak* (1927), (Transfer Den. 1931), 93 Ind. App. 491, 157 N. E. 464, our Appellate Court stated in the case where a parent knowingly permitted his under-aged son to drive an automobile on the highway in violation of the statute:

" '. . . Notwithstanding the provisions of this section, the defendant permitted his son to operate his machine. The object and purpose of the statute is to promote the safety of those traveling the public highways. While a motor vehicle is not, in and of itself, to be deemed a dangerous machine, nevertheless it becomes such in the hands of a careless and inexperienced person.' "

This statement and the principles involved in the above cases were subsequently approved in *Smith* v. *Thomas* (1955), 126 Ind. App. 59, 130 N. E. 2d 85.

The Supreme Court has recently considered the problem of reasonable foreseeability where negligent conduct was involved in the sale of alcoholic beverages. We held that one who sold intoxicating liquor to a minor in violation of the law, whom he knew or ought to have known under the circumstances was operating an automobile, was liable for injuries proximately resulting from the operation of the automobile while the minor was under the influence of such intoxicating liquor. *Elder* v. *Fisher* (1966), 247 Ind. 598, 217 N. E. 2d 847.

The area of law concerning motor vehicle safety and acceptable standards of conduct in relation thereto has been growing. The legislature of this State has recognized that an automobile in the hands of an incompetent person becomes highly dangerous on the highways in this day and age.

Burns' Ind. Stat. Anno. § 47-2906 states:

"No person shall authorize or knowingly permit a motor vehicle owned by him or under his control to be driven by

any person who has no legal right to do so or in violation of any of the provisions of this act."

Burns' Ind. Stat. Anno. § 47-2306 states:

"It is unlawful for the owner, or any other person, employing or otherwise directing the driver of any vehicle to require or knowingly to permit the operation of such vehicle upon a highway in any manner contrary to law."

and finally, Burns' Ind. Stat. Anno. § 47-1214 states:

". . . that operation by irresponsible persons or any other operation threatening the safety of the public or detrimental to the general welfare be prevented; . . ." *Boland* v. *Love*, 222 F. 2d 27 (D. C. 1955); *LeBlanc* v. *Pierce Motor Co.* (1941), 307 Mass. 535, 30 N. E. 2d 684.

I feel it is time that this Court recognize that the old case of *Fisher* v. *Fletcher, supra,* is not in harmony with this day and age and with the legislative enactments in the interest of public safety on the highways. When that case places automobiles in the same category as buggies and horses on the highway, it is not realistic with the present and not in the interest of public safety.

Likewise, there is no reason to change the general principles of the law of negligence, which makes one liable not only for what he knows *but what he ought to know under the circumstances* and which will not permit him to defend because of willful ignorance. There is no reason for making a special case of the general principles of negligence in its application to automobiles but not on other occasions. I believe Indiana will eventually have to come to the principles as enunciated in The Restatement of the Law, *supra,* and line up with the great weight of authority. We cannot ignore the problem of public safety on the highways. With traffic increasing every day, we cannot accept the standards set in a case nearly fifty years ago.

For these reasons, I dissent in the denial of transfer in this

case and the refusal to review the decision in *Fisher* v. *Fletcher, supra.*

Hunter, C. J., concurs in dissent.

NOTE.—Reported in 230 N. E. 2d 612.