October S. **JOHNSON**, Nicholas N. Bobo, Michael L. King, and Christine King, Appellants–Plaintiffs,

v.

Ronald **OWENS** and Jupe's Coupes, Incorporated, Appellees–Defendants.

No. 49A02–9306–CV–270.

Court of Appeals of Indiana, Second District.

Aug. 4, 1994.

Rehearing Denied Sept. 8, 1994.

Transfer Denied Dec. 16, 1994.

C. Warren Holland, Michael W. Holland, Holland & Holland, Indianapolis, for appellants.

John B. Drummy, Eric D. Johnson, Kightlinger & Gray, Indianapolis, for appellee, Jupe's Coupes, Inc.

FRIEDLANDER, Judge.

October Johnson, Nicholas Bobo, Michael King, and Christine King (collectively referred to as "Appellants") appeal a grant of summary judgment in favor of Jupe's Coupes in the Appellants' personal injury action against Jupe's Coupes and Ronald Owens. The general issue presented for review, i.e., whether the court erred in granting summary judgment in favor of Jupe's Coupes, may be divided into the following restated issues:

I. Did Jupe's Coupes voluntarily assume a duty to verify that Owens had a valid driver's license?

II. Did Jupe's Coupes violate a statutory duty by failing to verify that Owens had a valid driver's license?

III. Did Jupe's Coupes negligently entrust the vehicle to Owens in allowing him to drive the car off of the lot without verifying that he had a valid driver's license?

IV. Did the Appellants designate materials adequate to place at issue the question of proximate cause?

We affirm.

Following are the facts viewed in a light favorable to the Appellants, the nonmoving parties. On August 24, 1990, Jupe's Coupes, Inc., through its president Michael Indiano, sold an automobile to Owens and Dorothy Stennis. As a matter of routine, Jupe's Coupes obtained information regarding the status of a prospective purchaser's driver's license before completing a sale. Sherry Walker, a Jupe's Coupes employee, stated at a deposition that she had checked Owens's license prior to completing the sale and it appeared to be valid. Owens, however, submitted an affidavit asserting that he had not been asked by Jupe's Coupes to show his driver's license, nor had he done so. Owens claims that he had, instead, been asked for and shown them his social security card. It was later discovered that at the time he bought the car from Jupe's Coupes, Owens's license was suspended for driving while intoxicated. On the day of sale, Owens drove the car off the lot after he had tendered a down payment and signed a contract for payment of the remainder of the purchase price. Eight days after the sale, Owens was involved in a traffic accident while operating the car he had purchased from Jupe's Coupes. Owens's car left the road and struck a post. The appellants were passengers in the car and suffered injuries. At the time of the accident, Owens was legally intoxicated.

The Appellants sued Owens and Jupe's Coupes. The theories of liability alleged against Jupe's Coupes were set out in the following paragraph of the complaint:

"Such negligence includes but is not limited to negligent entrustment, negligence in the provision of the vehicle to Ronald Owens, and negligence with regard to the policies, procedures, and practices regarding the provision of vehicles to Defendant's customers." *Record* at 9.

### I.

In order to recover in a negligence action, a plaintiff must establish a duty on the part of the defendant, the breach of which was a proximate cause of an injury suffered by the plaintiff. *Lucas v. Dorsey Corp.* (1993), Ind.App., 609 N.E.2d 1191, *trans. denied.* In the instant case, Appel-

lants alleged that Jupe's Coupes breached the duty to verify that Owens had a valid driver's license before allowing him to drive the vehicle he had purchased. A car seller is under no statutory duty to verify that a prospective car buyer has a valid driver's license before completing a sale. Appellants offer no case which imposes such a duty, nor are we aware of one. Appellants contend, rather, that Jupe's Coupes's duty to verify that Owens had a driver's license arose by application of the doctrine of gratuitous assumption of duty.

A duty of care can arise when one assumes or undertakes a duty to act through affirmative conduct or agreement. *Harper v. Guarantee Auto Stores* (1989), Ind.App., 533 N.E.2d 1258, *trans. denied.* According to this doctrine, a party may gratuitously place himself in such a position that the law will impose upon him a duty to perform an undertaking in a manner which will not jeopardize the safety of others, including third parties. *Id.* The question of whether a party has undertaken a duty, and, if so, the scope of that duty, generally are jury questions. *Id.*

When deciding whether a party has gratuitously assumed a duty, we must first examine the nature of a defendant's allegedly negligent conduct to determine whether it constitutes misfeasance or nonfeasance. "Misfeasance is negligent conduct or active misconduct and will support liability for a breach in the performance of a gratuitously assumed duty." *Ember v. B.F.D., Inc.* (1986), Ind.App., 490 N.E.2d 764, 771, *reh'g denied,* (1988), 521 N.E.2d 981, *trans. denied.* "On the other hand, nonfeasance is a *complete* omission or failure to perform." *Id.* [emphasis in original]. Liability for nonfeasance is confined to situations in which the beneficiary detrimentally relied on performance, or when the defendant increased the risk of harm. *Id.* The distinction between nonfeasance and misfeasance is often subtle. It would be overly simplistic to characterize the difference as merely between action and inaction. Our courts have identified the determinative inquiry in such cases: "If one has engaged in affirmative conduct evidencing an undertaking to provide a [service], the failure to [provide the service], otherwise an 'omission,' will nonetheless support liability for the breach of a gratuitously assumed duty." *Ember, supra,* 490 N.E.2d at 771.

Appellants designated a portion of Indiano's deposition in support of their contention that Jupe's Coupes gratuitously assumed a duty to members of the public to verify that purchasers of their cars had valid driver's licenses. The Appellants contend that the purpose of Jupe's Coupes policy of checking driver's licenses was "to make sure that the prospective purchaser is a licensed driver, that the operator's license is current and to find out if the person has a legal right to drive the car...." *Appellants' Brief* at 5. Indiano's deposition, included the following:

"Q [Appellants' attorney] Do you obtain any information from the purchaser or prospective purchaser with regard to history of auto accidents or anything of that nature?

A [Indiano] No.

Q How about any information concerning their current status as to their operator's license?

A Oh, yeah. Yeah, they must have a current driver's license. We want to see them, yeah.

Q What kind of information do you obtain in that regard, with regard to the operator's license?

A Well, they show us their driver's license and so forth, and they also, we ask them, along with their license, to bring in like a bill from a utility company which also verifies address and so forth. So it does many things for us, verifies the address, verifies they have a current license and so forth.

Q Do you recall what the practice was at the time of the purchase of this vehicle, the one purchased by Ron Owens and Dorothy Tucker Stennis, with respect to checking out information about operator's license [sic]?

A Yes. Sherry [Walker] would have done that and would have asked them for like a telephone bill, so forth, to verify address and so forth. And if the operator's license differs from So-

cial Security, then we'll ask them for their Social Security card.

Q What is the purpose in obtaining information about the operator's license?

A The thing is, I want to make sure they're a licensed driver, make sure it's current, you know. Same way with the Social Security number, people can put a wrong Social Security, skip town, you try and track them down. Same way with the date of birth, that's very important with the Social Security, we ask for that. Anything that they ties [sic] into it, do they have a legal right to drive the car, and anything that ties in that we can get access to information if they try to take off." *Indiano Deposition* at 53–54.

Viewed as a whole, Indiano's explanation of Jupe's Coupes's policy with respect to checking driver's licenses indicates that the policy was enacted to assist Jupe's Coupes in collection efforts should such become necessary. It is true that Indiano stated that Jupe's Coupes would check for a "current driver's license" in part to verify that the prospective buyer has "a legal right to drive the car". Indiano's full explanation, however, indicates that such was done to verify the party's address. Jupe's Coupes also asked prospective buyers to bring, along with their license, bills which "also" (i.e., along with the driver's license) would verify the purchasing party's address. He noted that if the driver's license reflected an irregularity with regard to the party's social security number, Jupe's Coupes would ask to see the social security card as well. Indiano summed up the purpose of Jupe's Coupes's pre-sale procedure, including checking the prospective purchaser's driver's license: "anything that ties in that we can get access to information if they try to take off." *Record* at 54.

We therefore cannot agree with Appellants' contention that Jupe's Coupes's policy of checking driver's licenses "is motivated, at least in part, by its recognition of the importance of protecting the motoring public from the consequences of operation of the vehicle by an unlicensed driver." *Appellants' Brief* at 15. We conclude that the Appellants have failed to designate materials which present a question of fact as to whether Jupe's Coupes's policy was intended to benefit the public. The policy of checking driver's licenses was enacted for Jupe's Coupes's benefit, notwithstanding that it may have conferred an incidental benefit upon the public. Because the policy was for Jupe's Coupes's benefit, Jupe's Coupes did not assume a duty to the public, hence the Appellants, to verify that prospective buyers possess a valid driver's license. *Cf. Taylor v. United States* (1981) W.D.Ky., 521 F.Supp. 185 (government was not liable to miners for alleged negligence in inspecting mine because purpose of inspection policy was to compel others to maintain safe environment, and was not an assumption of a duty to directly render services to miners). The trial court properly granted summary judgment in Jupe's Coupes's favor on the question of whether Jupe's Coupes gratuitously assumed a duty to the Appellants to verify that Owens had a valid driver's license.

## II.

Appellants argue that Jupe's Coupes incurred civil liability by virtue of its failure to conform to the following statutory guidelines:

Ind.Code 9–1–4–49: [1]

"It shall be unlawful for any person having any vehicle in his custody to cause or knowingly permit any person to drive such a motor vehicle upon the public highways unless such person shall first obtain a license or permit as provided in chapters 1 through 4 of this article."

Ind.Code 9–1–4–51: [2]

"No person shall authorize or knowingly permit a motor vehicle owned by him or

---

**1.** This statute was repealed in 1991. The same provision may currently be found at Ind.Code 9–24–18–3.

**2.** This statute was repealed in 1991. The same provision may currently be found at IC 9–24–18–4.

under his control to be driven by any person who has no legal right to do so or in violation of any of the provisions of this title."

Appellants cite *Smith v. Thomas* (1955), 126 Ind.App. 59, 130 N.E.2d 85, for the proposition that a party may incur civil liability for selling a vehicle to a driver without verifying that the prospective buyer has a valid license. In *Smith*, an individual sold a car to a minor who was involved in a traffic accident several days later. In affirming a decision against the seller, the court noted that violation of then Ind.Code 47–2904 (1952 Burns Repl.) was sufficient to confer liability upon the seller. IC 47–2904 stated:

> "It shall be unlawful for any person having any vehicle in his custody to cause or knowingly permit any minor under the age of eighteen (18) years to drive such motor vehicle upon the public highways unless such minor shall have first obtained a license or permit as provided in this act."

Even were we to agree that civil liability may result from violation of a statute requiring that a party verify another's driver's license status and competence to drive before entrusting the operation of a vehicle to him, a threshold question which must be resolved is whether the statute in question was, in fact, violated.

In *Smith*, the defendant testified that he knew the buyer could not be more than seventeen years old. Nevertheless, in contravention of IC 47–2904, the seller neglected to verify that the buyer had a valid driver's license. Had he undertaken such a procedure, the seller would have discovered that the minor buyer did not have a valid driver's license. The *Smith* defendant's violation of

the statute is unarguable. Such is not true in the instant case.

IC 9–1–4–49 makes it unlawful for a person *having custody* of a vehicle to allow another to operate that vehicle without obtaining a license. The Appellants do not direct our attention to authority which requires that a party sell vehicles only to licensed drivers, nor do we find any. To the extent that the Appellants' argument is premised upon such a contention, it is rejected. Following the lawful sale of the vehicle to Owens and Stennis, Jupe's Coupes no longer had "custody" of the vehicle within the meaning of IC 9–1–4–49. Therefore, Jupe's Coupes did not violate the statute when Owens drove off of the car lot following his lawful purchase of the vehicle.

The same rationale applies to the question of whether Jupe's Coupes violated IC 9–1–4–51. In order to violate IC 9–1–4–51, a party must own a vehicle, or the vehicle must be "under his control." Following sale of the car to Owens, Jupe's Coupes neither owned the vehicle nor was it under Jupe's Coupes's control. The trial court correctly ruled that as a matter of law Jupe's Coupes was not subject to civil liability for violating either IC 9–1–4–49 or IC 9–1–4–51.[3]

### III.

In their complaint, the Appellants alleged negligent entrustment as a theory of liability against Jupe's Coupes. We have determined in Issue II, *supra*, that Jupe's Coupes was no longer an "owner" of the vehicle when Owens drove away. One may, however, be liable for another's negligent use of a vehicle under the theory of negligent entrustment without being an owner of the vehicle.

---

3. Even were we to agree that Jupe's Coupes violated one or both of the statutes, the Appellants' legal position would not be altered. The Appellants sought recovery under the theory of negligent entrustment. In *Ellsworth v. Ludwig* (1967), 140 Ind.App. 437, 223 N.E.2d 764, *trans. denied*, 249 Ind. 4, 230 N.E.2d 612, the court addressed the argument that the commonlaw doctrine of negligent entrustment in the context of automobile cases, as expressed in *Fisher v. Fletcher* (1922), 191 Ind. 529, 133 N.E. 834, had been superseded by what the court referred to as the "entrustment" statutes, referring to Ind.Code

47–2306 (Burns Code Ann.), Ind.Code 47–1214 (Burns Code Ann.), and Ind.Code 47–2906 (Burns Code Ann.), which is substantially similar to IC 9–1–4–51. The *Fisher* court concluded that the commonlaw principles of negligent entrustment in civil actions remained unchanged by the statutes: "It is apparent that the above statutes substantially reiterate the case law set out in Fisher v. Fletcher, supra...." 223 N.E.2d at 766. The Appellants' negligent entrustment argument therefore is coterminous with their statutory argument, and removal of the latter theory from the jury's consideration would have had no impact upon the outcome of the Appellants' case.

In order to establish a negligent entrustment claim against a defendant for another's use of a vehicle, the plaintiff must demonstrate that the defendant entrusted the vehicle to a driver with knowledge that the driver was incompetent to drive. *Sutton v. Sanders* (1990), Ind.App., 556 N.E.2d 1362. For liability to attach, a party "must have actual and immediate knowledge of the driver's unfitness to drive at the time of the entrustment." *Id.* at 1365.

In most negligent entrustment cases, "unfitness" typically refers to intoxication or youth. Owens was intoxicated at the time of the accident eight days after sale of the car. There is no evidence, however, that Owens was intoxicated at the time of sale. Negligent entrustment in the instant case must therefore be premised upon having entrusted the car to an unlicensed driver. Appellants argue that there was evidence from which the jury could conclude that Jupe's Coupes had actual knowledge at the time of sale that Owens did not have a driver's license. The Appellants reason that the jury could combine Walker's testimony that she checked Owens's license, with Owens's testimony that he did not possess a license and reasonably infer that Walker asked to see Owens's license and discovered that he did not have one. We conclude that the evidence permits no such inference.

Walker did indeed testify upon deposition that she had asked to see Owens's license. She claimed, however, that Owens's produced

what appeared to be a valid driver's license. Owens, on the other hand, submitted an affidavit stating that Jupe's Coupes had not asked to see his driver's license, but instead had checked only his social security card. Thus, there is evidence that Jupe's Coupes saw what appeared to be a valid driver's license, and there is evidence that they did not even ask to see a license. In either case, Jupe's Coupes would not have had actual knowledge that Owens's did not have a driver's license.[4]

In summary, there is no evidence permitting a reasonable inference that Jupe's Coupes asked and became aware through Owens's response that Owens did not possess a valid driver's license. Absent such actual knowledge of Owens's lack of a valid driver's license, Jupe's Coupes could not be found negligent pursuant to the theory of negligent entrustment.[5] *Sutton, supra.*

## IV.

Appellants contend that there remain questions of fact with regard to the element of proximate cause. In addition to the argument that Jupe's Coupes was subject to liability for failing to verify the status of Owens's driver's license, previously rejected in Issue I, Appellants also contend that Jupe's Coupes is liable for having provided temporary license plates, termed "interim plates" when issued by a car dealer, for use on the vehicle.

4. It is the absence of evidence of actual knowledge of Owens's incompetence which distinguishes this case from those cited in *Appellants' Citation of Additional Authorities. See Dillon v. Suburban Motors, Inc.* (1985), 166 Cal.App.3d 233, 212 Cal.Rptr. 360, *superseded*, 215 Cal.Rptr. 678, 701 P.2d 825, *dismissed*, 218 Cal.Rptr. 584, 705 P.2d 1260 (dealer knew driver had no driver's license); *Roland v. Golden Bay Chevrolet* (1984), 161 Cal.App.3d 102, 207 Cal.Rptr. 413, *dismissed*, 217 Cal.Rptr. 415, 704 P.2d 175 (driver did not testify, as did Owens, that he had not been asked by the dealer whether he had a driver's license; he testified only that he showed an identification card upon purchasing the vehicle); *Hartford Accident and Indemnity Co. v. Abdullah* (1979), 94 Cal.App.3d 81, 156 Cal.Rptr. 254 (dealer had actual knowledge that driver had recently been arrested for outstanding traffic warrants); *Small v. St. Francis Hospital* (1991), 220 Ill.App.3d 537, 163 Ill.Dec. 203, 581 N.E.2d

154 (driver was only fifteen years old); *Vince v. Wilson* (1989), 151 Vt. 425, 561 A.2d 103 (prior to sale, dealer had been told by driver's relatives that the driver had no license and had failed the driver's test several times).

5. Appellants argue for the first time upon appeal that Indiana should adopt § 390 of the *Restatement (2d) of Torts*, pursuant to which a plaintiff would not be required to demonstrate actual knowledge in order to prevail on a negligent entrustment claim. The general rule, however, is that "a party may not raise an issue on appeal which was not raised in the trial court.... [Citations omitted.] This rule also applies to summary judgment proceedings." *Hardiman v. Governmental Interinsurance Exchange* (1992), Ind. App., 588 N.E.2d 1331, *trans. denied.* The argument is waived.

Jupe's Coupes typically provides its purchasers with interim plates, which are valid for thirty-one days. These plates are displayed in the car window until permanent plates are obtained from the Bureau of Motor Vehicles (BMV). Walker testified that it was standard operating procedure for Jupe's Coupes to check a purchaser's driver's license prior to issuing interim plates. Jupe's Coupes issued an interim plate to Owens before he left with the car.

We note that the Appellants' contention in this regard is not premised upon a claim that the interim plate created an agency relationship whereby Jupe's Coupes would be liable for Owens's negligence based upon standard agency principles.[6] We therefore need not address this argument.

The relevant statutory guidelines do not require that a car dealer verify that a purchaser have a valid driver's license before issuing interim plates. Ind.Code 9–10–2–10, the interim plates statute in force at the time, lists no requirements with regard to a purchaser's qualifications, but rather provides for the form of the plate, where it may be displayed, and how long an interim plate is valid. Appellants nevertheless contend that IC 9–10–2–10(d) provides the basis for liability. IC 9–10–2–10(d) states:

"An interim registration plate authorizes a motor vehicle owner to operate that vehicle for a maximum period of thirty-one (31) days after the date of delivery of that vehicle to its owner or until regular registration plates are issued, whichever occurs first."

Appellants reason that by issuing the interim plate, Jupe's Coupes "authorized" Owens to operate the vehicle for thirty-one days. Appellants misinterpret the meaning of IC 9–10–2–10(d).

The statute does not confer upon car dealers the power to assign driving privileges. Determination of the eligibility to drive remains within the exclusive province of the BMV. See Ind.Code 9–24–1–1 (formerly IC 9–1–4–26). IC 9–10–2–10(d) merely sets out the period of time that a vehicle may be legally operated using interim plates. The

plate did no more than render the *vehicle* eligible to be driven on public roads; it did not "enable" Owens to drive the car. Simply put, the interim plate did not impact the right or power of Owens to drive the car on public roads, but instead was relevant only on the question of whether the *vehicle* was properly on public roads at the time of the accident.

■ The other arguably applicable statute, Ind.Code 9–18–7–1, provides that "[a] temporary registration permit may be obtained under this section if the owner of the vehicle provides proof of financial responsibility in the amounts specified under IC 9–25 in a form required by the bureau." Taken together, IC 9–10–2–10 and IC 9–18–7–1 require at most that a party provide proof of financial responsibility in order to obtain temporary plates. Even assuming for the sake of argument that Jupe's Coupes, as a dealer, had a duty to verify that Owens had automobile insurance, an assumption not in harmony with Indiana law (*see Ellis, supra* ), and that Jupe's Coupes failed to verify Owens's financial responsibility, such does not confer liability upon Jupe's Coupes for injuries resulting from Owens's negligent driving. *Id.* at 1352.

■ Finally, proximate cause is an essential element in a negligence cause of action and requires that there be a reasonable connection between the defendant's conduct and the damages suffered by the plaintiff. *Cowe by Cowe v. Forum Group, Inc.* (1991), Ind., 575 N.E.2d 630. Proximate cause requires, at a minimum, that the harm would not have occurred but for the defendant's conduct. *Id.* The test for determining whether a negligent act or omission is a proximate cause of an injury is whether the injury is a natural and probable consequence which should have been foreseen. *Yaney by Yaney v. McCray Memorial Hosp.* (1986), Ind.App., 496 N.E.2d 135. Lacking actual knowledge of the suspended or revoked status of Owens's driver's license, the mere negligent failure of Jupe's Coupes to verify that Owens possessed a driver's license and the provision of an interim plate does not

6. This argument was rejected in *Ellis v. Weger* (1990), Ind.App., 550 N.E.2d 1347.

lead one to expect or foresee that, eight days later, Owens would operate the vehicle while intoxicated, causing injury. On the facts of this case, we discern no causal connection between Jupe's Coupes's failure to check Owens's license and the occurrence giving rise to this lawsuit.

Judgment affirmed.

RILEY, J., concurs.

KIRSCH, J., concurs in part and dissents in part with separate opinion.

KIRSCH, Judge, concurring in part and dissenting in part.

I concur with the majority's resolution of issues I and II. As to the resolution of issues III and IV, however, I respectfully dissent.

Issues III and IV turn upon whether Jupe's Coupes had actual knowledge that Owens did not have a driver's license at the time it entrusted the automobile and plates to him and whether there is a sufficient nexus between such entrustment and the accident to constitute proximate cause. Both questions are material questions of fact which render the entry of summary judgment inappropriate.

The question of whether Jupe's had actual notice that Owens did not have a driver's license was not raised by Jupe's Coupes in its motion for summary judgment, nor asserted by Jupe's on appeal. Indeed, Jupe's states that the issue "is not whether Jupe's had actual knowledge that Owens did not possess a driver's license; the inquiry is whether Jupe's had actual knowledge that Owens was incompetent to drive...." (Appellee's Brief at p. 25). At the oral argument before this court, Jupe's acknowledged that, at this stage of the proceedings, the Record supports the inference that Jupe's knew Owens did not have a driver's license.

Here, there is conflicting evidence regarding what information Jupe's requested and what information Owens produced. Jupe's states that it asked for Owens' license; Owens states that it did not. Jupe's states that Owens produced what appeared to be a valid driver's license; Owens states that he did not. The majority states that the Record does not permit an inference that Jupe's requested Owens' license and Owens did not produce one. I disagree. The statements by Jupe's that it asked for and received a valid driver's license are separate and independent statements. Similarly, Owens' statements are also separate and independent. The truth of one is neither determinative of, nor dependent upon, the truth of the other. Neither logic, nor experience, requires that we accept either statement as completely true. A trier of fact could reasonably believe (1) that Jupe's asked for a driver's license and (2) that Owens produced something other than a valid driver's license. What Jupe's requested and what it received are material questions of fact which render summary judgment inappropriate.

The issue of proximate cause is also a question of fact which renders summary judgment inappropriate. Proximate cause requires that there be a reasonable connection between the defendant's conduct and the plaintiff's injuries. In *Shaw v. Hart* (1964), 136 Ind.App. 567, 202 N.E.2d 587, this court said:

"... Indiana has always recognized the rule that negligence cannot be predicated upon the mere lack of an operator's license. Negligence must be determined from the facts surrounding the accident. The lack of a license is immaterial unless a causal connection between the injuries and the failure to have a license is shown." *Id.* at 588.

Here, resolving the question of Jupe's actual knowledge that Owens did not have a driver's license in favor of the plaintiffs, the non-moving parties, the record discloses the following: Jupe's entrusted the car and temporary plates to Owens with actual knowledge that he did not have a driver's license. Owens did not have a driver's license because the States of Indiana and Ohio had suspended his licenses for multiple offenses of driving while intoxicated. Owens proceeds, within eight days of the entrustment, to operate the vehicle while intoxicated. In the course of such operation, he causes injury to the plaintiffs. The required nexus between the defendant's negligence and plaintiffs' injuries

lies in Owens' operation of the vehicle while intoxicated. Such operation was the reason for Owens' license suspension and the cause of injuries to the plaintiffs.

In *Smith v. Thomas* (1955), 126 Ind.App. 59, 130 N.E.2d 85, this court held that one who negligently entrusts an automobile and license plates to one too young to obtain a license is liable for the injuries caused as a result of the negligent operation of the automobile by the minor. *Id.,* 130 N.E.2d at 89. One who negligently entrusts an automobile and license plates to one whose license has been suspended in two states for multiple offenses of driving while intoxicated could reasonably foresee that such individual may operate such vehicle while intoxicated, and should be held liable for injuries resulting from such operation.

A jury could reasonably find the requisite causal connection between the alleged negligent entrustment and the injuries sustained by the plaintiffs and could allocate a portion of the total fault resulting in this accident to Jupe's; a jury could reasonably find to the contrary. In either event, the issue of proximate cause is a question of fact for the jury to determine. *See State Street Duffy's, Inc. v. Loyd* (1993), Ind.App., 623 N.E.2d 1099, 1101.