**L.T. GATES, M.D., Appellant–Defendant,**

v.

**Mai RILEY, by next friend, her father, Robert Keith RILEY, Appellee–Plaintiff.**

**No. 49A04–9901–CV–43.**

Court of Appeals of Indiana.

Feb. 10, 2000.

Transfer Denied May 4, 2000.

---

Nana Quay–Smith, Daniel R. Fagan, Grantland M. Clapacs, Bingham Summers Welsh & Spilman, Indianapolis, Indiana, Attorneys for Appellant.

Thomas C. Doehrman, Conour Doehrman Starkey, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge

In this interlocutory appeal, Dr. L.T. Gates challenges the denial of his summary judgment motion in a medical malpractice action filed against him on behalf of Mai Riley, deceased, by her father, Robert Keith Riley. Upon appeal, Dr. Gates presents the following restated issue for review, which is dispositive of the appeal:

> In conjunction with a commercial driver's license application, if a physician indicates on a physical examination form that the examinee suffers from a disqualifying vision deficiency, but nevertheless certifies the applicant and the state issues a driver's license notwithstanding the defect, can the physician's certification be the proximate cause of injuries suffered by a third party as a result of a subsequent vehicular collision with the applicant?

We reverse.

The facts favorable to the nonmoving party are that Charles Hill has been a professional commercial truck driver since the 1950s. In 1958, Hill's right eye was surgically removed because of a malignant tumor. Formerly, a person could operate a semi-tractor/trailer with a chauffeur's license. At some point in time prior to

1990, the law changed and a person was required to obtain a commercial driver's license (CDL) in order to operate a semi-tractor/trailer. According to Federal Motor Carrier Safety Regulations (FMCS Regulations), a person must have binocular vision in order to be eligible for a CDL. *See* 49 C.F.R § 391.41(b)(10). Prior to April 1, 1992, a person could obtain a CDL, even with a total loss of vision in one eye, so long as they applied for a waiver and met certain conditions. The waiver program ended in July 1992. Since sometime prior to 1992, Indiana Bureau of Motor Vehicles (BMV) regulations permit a person with monocular vision (*i.e.*, vision in only one eye) to obtain a CDL with a K-restriction. A person may operate a commercial vehicle within the State of Indiana with such a K-restriction license, but is not eligible to drive interstate. In order to be eligible for a K-restriction license, the applicant must have, among other things, possessed a commercial driver's license before April 1, 1992. If otherwise qualified, such a person was "grandfathered" into the K-restriction program.

In order to qualify for a CDL under both federal and Indiana law, a person is required to undergo and pass a physical examination (a DOT examination). In conjunction with the DOT examination, the examining physician was required to fill out a specific form, which the parties refer to as a "DOT form." Prior to November 1, 1991, Dr. Gates had performed forty or fifty DOT examinations. In fact, Dr. Gates kept blank DOT forms on file at his office.

On November 1, 1991, Dr. Gates performed a DOT examination on Hill. He noted on the DOT form that Hill had an artificial right eye. Hill took the completed DOT form to the BMV and was erroneously issued an unrestricted CDL with a hazardous endorsement, which permitted Hill to transport hazardous materials interstate. Apparently, the BMV clerk did not notice that the form indicated Hill had only one eye.

Drivers possessing a CDL were required to renew the license every four years. However, they were required to pass a physical examination every two years in order to remain eligible for the last two years of the license.

On November 2, 1993, Dr. Gates performed another DOT examination upon Hill, and again noted on the DOT form that Hill's right eye was enucleated (*i.e.*, had been removed). Dr. Gates also noted on the line reserved for "General Comments" that Hill had "monocular vision only." *Record* at 395. At the bottom of the DOT form, Dr. Gates completed the following section:

MEDICAL EXAMINER'S CERTIFICATE
TO BE COMPLETED ONLY IF DRIVER
IS QUALIFIED

MEDICAL EXAMINER'S CERTIFICATE
I certify that I have examined

Hill, Charles
(Driver's name (Print))

in accordance with the Federal Motor Carrier Safety Regulations (49 CFR 39 1.41 through 39 1.49) and with the knowledge of his/her duties, I find him/her qualified under the regulations.

Qualified only when wearing corrective lenses

Qualified only when wearing a hearing aid

A complete examination form for this person is on file in my office at:

5941 E. 30th St. INDBLS (sic) IN 46218
Address

Nov 2 1993            L.T. Gates, M.D.
(Date of examination)(Name of examining doctor (print))

/s/ L.T. Gates          LIC # [indecipherable]
(Signature of examining doctor)

X    /s/ Charles W Hill
(Signature of driver)

X    3323 E Fall Creek Py [indecipherable]
(Address of driver)

*Record* at 744.

On January 19, 1995, Mai Riley was driving northbound on S.R. 37 in Hamilton County, Indiana. As she approached 191st Street, which crossed S.R. 37, she pulled

into a cross-over lane in the median of S.R. 37 and waited for a southbound vehicle to pass, as the southbound traffic had the right-of-way. After the vehicle passed, Riley drove across the southbound lanes of S.R. 37 toward westbound 191st Street. At that time, Hill was operating his semi-tractor/trailer southbound in the curb or western lane of S.R. 37, a short distance behind the car that Riley had paused for before crossing the southbound lanes of S.R. 37. Hill had the right-of-way, but Riley drove into his path. Hill swerved to avoid striking her vehicle, but the two vehicles collided. Riley sustained severe injuries, including a serious brain injury.

On October 26, 1995, a complaint for damages was filed on Mai Riley's behalf against Dr. Gates, alleging negligence. On November 13, 1998, Riley died as a result of injuries suffered in the collision with Hill almost three years earlier. On January 11, 1999, Riley's father and mother (the Rileys) filed an amended complaint for wrongful death. The amended complaint alleged that Dr. Gates was negligent in the following respects:

5. That pursuant to Federal Law (49 U.S.C. § 391–41–49) all operators of commercial motor vehicles, including semi-tractor/trailers, must undergo and successfully complete a physical examination performed by a qualified health care professional as a pre-requisite [sic] for licensure.

6. That during the physical examination, Dr. Gates discovered that Charles Hill had lost his right eye and as a result experienced monocular vision.

7. That monocular drivers are not qualified to operate commercial motor vehicles under existing Federal Motor Carrier Safety Regulations and are therefore strictly prohibited from operating a semi-tractor/trailer.

8. That following the November 2, 1993 physical examination of Charles W. Hill, Dr. Gates, completed and signed a form entitled, *"Physical Examination Form"* and *"Medial Examiner's Certificate"*, attached hereto as Exhibit "A", certifying that Mr. Hill was medically qualified to operate a semi-tractor/trailer.

9. That Dr. Gates was under a duty to review and understand the *"Instructions for Performing and Recording Physical Examinations"* including the prohibition against monocular semi-tractor/trailer drivers, located on the reverse side of the physical examination form described above.

10. That in violation of the Federal Motor Carrier Safety Regulations (49 CFR § 391.41–49) and with the knowledge of Mr. Hill's duties and obligations as a semi-tractor/trailer operator and the loss of Mr. Hill's right eye, Dr. Gates negligently qualified Mr. Hill to operate a commercial motor vehicle.

11. That Dr. Gates failed to exercise the professional standards of learning, care, skill, and diligence normally exercised by a physician practicing the specialty of family practice medicine, and as a result, certified an unqualified driver to operate a semi-tractor/trailer in contravention of Federal Law.

*Record* at 832–33.

On May 11, 1998, Dr. Gates filed a Motion for Preliminary Determination of Law and Motion for Summary Judgment. Dr. Gates claimed that he was entitled to summary judgment because (1) the BMV, not Dr. Gates or any other physician, is solely responsible for determining whether an applicant is eligible for a CDL, and (2) Hill was and is still eligible in Indiana for a CDL with a K-restriction. Dr. Gates appeals the denial of his motion for summary

judgment.[1]

Our standard of review when considering rulings on summary judgment motions is well settled:

> On appeal the standard of review of a summary judgment motion is the same standard used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. The moving party bears the burden of proving the absence of a genuine issue of material fact. If the movant sustains this burden, the opponent must set forth specific facts showing that there is a genuine issue of material fact.

*Shell Oil Co. v. Lovold Co.*, 705 N.E.2d 981, 983–84 (Ind.1998) (some citations omitted).

In order to recover in a medical malpractice action based upon negligence, a party must establish that 1) the defendant owed the plaintiff a duty of care; 2) the defendant breached the duty by failing to conform his conduct to the requisite standard of care; and 3) the plaintiff suffered compensable injury that was proximately caused by the defendant's breach. *Hill v. Beghin*, 644 N.E.2d 893 (Ind.Ct. App.1994), *trans. denied.* In order to prevail in his summary judgment motion, Dr. Gates was required to demonstrate that the undisputed facts negated at least one element of the Rileys' case. *See Collins v. J.A. House, Inc.*, 705 N.E.2d 568 (Ind.Ct. App.1999). Dr. Gates sought through his summary judgment motion to negate the element of proximate cause. He contends upon appeal, as he did before the trial court, that his signature on the DOT form was not a proximate cause of Mai Riley's injuries and subsequent death.

As indicated above, proximate cause is an essential element in a negligence action. A negligent act or omission is the proximate cause of an injury if the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated. *Town of Montezuma v. Downs*, 685 N.E.2d 108 (Ind.Ct.App. 1997), *trans. denied.* Proximate cause requires that there be a reasonable connection between the defendant's allegedly negligent conduct and the plaintiff's damages. *Johnson v. Owens*, 639 N.E.2d 1016 (Ind.Ct.App.1994), *trans. denied.* "Proximate cause requires, at a minimum, that the harm would not have occurred but for the defendant's conduct." *Id.* at 1023. Therefore, the proximate cause of an injury is "the cause which sets in motion the chain of circumstances leading up to the injury and has been defined as that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Hill v. Beghin*, 644 N.E.2d at 896 (quoting *Johnson v. Bender*, 174 Ind.App. 638, 369 N.E.2d 936, 939 (1977)). This means that in the instant case, the Rileys were bound to demonstrate an unbroken chain of events from Dr. Gates's alleged negligence to Hill's collision with Mai Riley. *See Hill v. Beghin*, 644 N.E.2d 893.

Claudia Goldman was employed by the BMV. During a March 26, 1996 deposition, Goldman testified that she supervised the issuance of CDLs in Indiana. She revealed that sometime prior to 1990, persons could operate semi-tractor/trailers with a chauffeurs's license. At some point in time, the federal government enacted the FMCS Regulations in part to regulate the licensing of persons to operate semi-tractor/trailer trucks. According to FMCS Regulations in effect after 1990, a person was required to possess a CDL in order to drive a semi-tractor/trailer interstate. In order to obtain a CDL, a person

---

1. Oral argument was conducted before this court on August 26, 1999.

was required to pass a physical examination.

The parties argued eloquently in their appellate briefs and in oral argument before this court on the subject of whether Hill could have been issued a CDL with a K-restriction both in 1991 and thereafter, and whether and how that bears upon the Rileys' lawsuit. This question is relevant because, as we understand it, the Rileys' claim against Dr. Gates is that if he had not certified Hill for a CDL, then Hill would not have been operating the semi-tractor/trailer on the day in question and the collision would never have occurred.

The K-restriction program was operating in Indiana in 1991, and Hill was eligible for such a license because he met the qualifying conditions, as set out previously. Goldman testified during her deposition that Hill would have been granted a K-restriction had he applied for it in 1991, which would have allowed him to operate a semi-tractor/trailer intrastate in Indiana. Indeed, several months after the collision, Hill applied for and received a K-restriction license. Therefore, even if Dr. Gates had failed to certify Hill for an unrestricted CDL, Hill would have obtained a K-restriction license in its stead. Such a license would have permitted Hill to legally operate a semi-tractor/trailer at the intersection of S.R. 37 and 191st Street on January 19, 1995. Therefore, the Rileys cannot show that, but for Dr. Gates's signature on the relevant line on the DOT form, the accident would not have occurred.[2]

The judgment is reversed and the trial court is instructed to grant Dr. Gates's motion for summary judgment.

Judgment reversed.

RILEY, J., and ROBB, J., concur.

---

2.  We reserve for another day a consideration of the extent of an examining doctor's liability, if any, for negligently certifying an examinee as fit, in cases where a CDL could not have been attained without the certification.