▫ **Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 05 2014, 9:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ROBERT D. BROWN**
Kenneth J. Allen Law Group
Valparaiso, Indiana

ATTORNEY FOR APPELLEE:

**MATTHEW J. HAGENOW**
Newby, Lewis, Kaminski & Jones, LLP
LaPorte, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| VICTOR MERCALDO and NANCY JENKINS, individually and as Parents and Natural Guardians of KELLY P. MERCALDO, Minor Child, Deceased | ) ) ) ) | |
| and | ) ) | |
| MAGEN M. SINGLETON, ALLEN SINGLETON and SHARI SINGLETON | ) ) ) | |
| Appellants-Plaintiffs, | ) ) | |
| vs. | ) ) | No. 64A04-1311-CT-579 |
| ANDREW HAGENOW and ALYSSA R. BROWN, | ) ) ) | |
| Appellees-Defendants. | ) ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable William E. Alexa, Special Judge
Cause No. 64D01-0902-CT-1777

**May 5. 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Victor Mercaldo and Nancy Jenkins, individually and as the parents and natural guardians of Kelly P. Mercaldo ("Kelly"), along with Magen M. Singleton ("Magen"), Allen Singleton, and Shari Singleton (collectively "the Plaintiffs"), brought a claim for wrongful death and personal injury against Andrew Hagenow ("Hagenow") after Magen was injured and Kelly was killed in an automobile accident involving a vehicle owned by Hagenow and driven by their friend Alyssa Brown ("Alyssa"). The trial court granted Hagenow's motion for summary judgment, and the Plaintiffs appeal, claiming that there was a genuine issue of material fact regarding whether Hagenow negligently entrusted his vehicle to Alyssa.

We affirm.

**Facts and Procedural History**

On the evening of October 3, 2008, eighteen-year-old Alyssa Brown, seventeen-year-old Magen, and sixteen-year-old Kelly went to the house of twenty-one-year-old Hagenow. Alyssa drove Magen and Kelly to Hagenow's house in her Volkswagen Jetta. Hagenow offered the girls a beer, and Kelly and Magen each drank one beer. There is no indication, however, that Alyssa drank any alcohol or was otherwise impaired. While at Hagenow's home, the parties listened to music and "h[u]ng out." Appellant's App. p. 281.

At some point in the evening, Alyssa asked Hagenow if she could drive his car, a 2008 Ford Mustang, to meet her boyfriend. Alyssa planned to take Magen and Kelly with her and drop Kelly off before returning to Hagenow's house. Hagenow declined Alyssa's first two requests to drive his car. According to Magen, Hagenow told Alyssa

2

that he did not want her to drive the car because it was "too powerful, too fast, and he did not think she could drive it safely." Appellant's App. p. 293. Alyssa had, however, driven Hagenow's car in the past without incident. When Alyssa asked a third time, Hagenow did not refuse, but stated that he needed to see if the car had enough fuel. The parties then walked outside to the car, where Hagenow checked the fuel gauge and threw his keys to Alyssa.

Alyssa, Magen, and Kelly then got in the car, which had been parked in a gravel driveway. Alyssa accelerated the car quickly, spinning the rear tires and throwing gravel as she took off. Alyssa quickly drove down the long driveway and again spun the wheels of the car and threw up gravel. Alyssa then drove the car on a county road where the posted speed limit was thirty-five miles per hour. Alyssa, however, was travelling in excess of eighty miles per hour. As the car approached a stop sign near the intersection of the road and a railroad track, Alyssa stated her intention to "jump" the tracks. She disregarded the stop sign and hit the tracks at approximately seventy-six miles per hour. This caused the car to go airborne for over seventy-seven feet. When the car landed, Alyssa lost control, and the vehicle went into a ditch and struck a tree. Magen was seriously injured in the accident, and tragically, Kelly was killed.

On February 24, 2009, Kelly's parents filed suit against Hagenow and Alyssa, claiming that Hagenow negligently entrusted his vehicle to Alyssa and that Alyssa negligently operated the vehicle. The complaint was subsequently amended to include Magen and her parents as additional plaintiffs. On April 19, 2010, Hagenow filed a motion for summary judgment. After receiving several extensions of time, the Plaintiffs

3

responded to Hagenow's motion on July 17, 2013. The court held a summary judgment hearing on October 24, 2013, and issued an order granting Hagenow's motion for summary judgment on November 6, 2013. The Plaintiffs now appeal.

**Summary Judgment Standard of Review**

Our standard for reviewing a trial court's order granting a motion for summary judgment is well settled: a trial court should grant a motion for summary judgment only when the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Altevogt v. Brand, 963 N.E.2d 1146, 1150 (Ind. Ct. App. 2012) (citing Ind. Trial Rule 56(C)). The trial court's grant of a motion for summary judgment comes to us cloaked with a presumption of validity. Id. "'An appellate court reviewing a trial court summary judgment ruling likewise construes all facts and reasonable inferences in favor of the non-moving party and determines whether the moving party has shown from the designated evidentiary matter that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.'" Id. (quoting Dugan v. Mittal Steel USA Inc., 929 N.E.2d 184, 186 (Ind. 2010)). However, a *de novo* standard of review applies where the dispute is one of law rather than fact. Id. On appeal, we examine only those materials designated to the trial court on the motion for summary judgment, and we must affirm the trial court's entry of summary judgment if it can be sustained on any theory or basis in the record. Id.

**Discussion and Decision**

The Plaintiffs claim that there was a genuine issue of material fact with regard to whether Hagenow negligently entrusted his vehicle to Alyssa, thereby precluding summary judgment. Generally, when an instrumentality passes from the control of a person, his responsibilities for injuries inflicted by it ceases. Johnson v. Patterson, 570 N.E.2d 93, 96 (Ind. Ct. App. 1991) (citing 79 Am.Jur.2d Weapons & Firearms § 38 (1975)). An exception to this general rule is the concept of negligent entrustment, i.e. "where the instrument is entrusted to one who is incompetent or irresponsible or who lacks the capacity to safely use or operate the instrumentality." Id. (citing 57A Am.Jur.2d Negligence § 329 (1989)). Although the concept of negligent entrustment has usually been applied to cases involving motor vehicles, its applicability does not depend on the nature of the chattel or instrumentality, but on the supplying of the chattel for probable negligent use. Id.

To support a claim of negligent entrustment of a vehicle, the plaintiff must demonstrate that the defendant: (1) entrusted his vehicle; (2) to an incapacitated person or one who is incapable of using due care; (3) with actual and specific knowledge that the person is incapacitated or incapable of using due care at the time of the entrustment; (4) proximate cause; and (5) damages. Williams v. Safe Auto Ins. Co., 980 N.E.2d 326, 329 (Ind. Ct. App. 2012); see also Johnson v. Owens, 639 N.E.2d 1016, 1022 (Ind. Ct. App. 1994) (holding that, for liability to attach under a theory of negligent entrustment, "a 'must have actual and immediate knowledge of the driver's unfitness to drive at the time of the entrustment.'") (quoting Sutton v. Sanders, 556 N.E.2d 1362, 1365 (Ind. Ct. App.

5

1990)). In most negligent entrustment cases, the driver's unfitness typically refers to intoxication or youth. Owens, 639 N.E.2d at 1022. More generally stated, a person is incompetent to drive if she is incapacitated, uninstructed in the vehicle's use, or unfamiliar with the dangers of using the vehicle. Roessler v. Milburn, 692 N.E.2d 1377, 1379 (Ind. Ct. App. 1998).

The Plaintiffs insist that they designated evidence sufficient to create a genuine issue of material fact with regard to whether Hagenow acted negligently when he permitted Alyssa to drive his car. Specifically, they focus on Magen's affidavit in which she averred that Hagenow told Alyssa that he did not want her to drive the car because it was "too powerful, too fast, and he did not think she could drive it safely." Appellant's App. p. 293. In contrast, Hagenow designated evidence indicating that Alyssa had driven the car in the past without incident and that Alyssa was not intoxicated or otherwise impaired.

Viewing all the designated evidence in the light most favorable to the Plaintiffs, as the non-moving parties, we still come to the conclusion that the Plaintiffs' designated evidence is insufficient to establish a genuine issue of material fact on the issue of whether Hagenow is liable under a theory of negative entrustment. Even if Hagenow expressed a concern that his car was "too powerful" or "too fast" there is nothing that shows that he had actual and immediate knowledge that Alyssa was "incapacitated" or incapable of using due care. With regard to incapacitation, there was no evidence that Alyssa was intoxicated, ill, or otherwise incapable of driving the car. To the contrary, there was evidence that she had not been drinking and did not otherwise appear to be

6

incapacitated. There was also no evidence that Hagenow had actual and immediate knowledge that Alyssa was incapable of using due care. Although Hagenow may have expressed concern about her ability to drive the car, she had, in fact, driven the car before without incident. The fact that Alyssa later drove the car without exercising due care does not mean that she was *incapable* of exercising due car. We therefore conclude that the trial court properly concluded that there was no evidence that Hagenow had actual and immediate knowledge that Alyssa was incapacitated or incapable of exercising due care when he entrusted her with his vehicle.

We also reject the Plaintiffs' suggestion that Hagenow should have contacted Alyssa after she did a "burn out" at the end of the driveway and warned her about the capabilities of the car or told her to return. The fact that Alyssa spun the tires on the car as she drove down the driveway does not establish that Hagenow had actual and immediate knowledge that Alyssa was *incapable* of using due care. Indeed, she had driven the car in the past without incident. Further, this behavior occurred after Hagenow entrusted Alyssa with the car. Negligent entrustment requires actual and immediate knowledge of the driver's unfitness to drive *at the time of the entrustment*. Alyssa's behavior in the car occurred after the entrustment. And we are not inclined to extend the concept of negligent entrustment to require remedial behavior on the part of the defendant after the entrustment has occurred.

### Conclusion

Viewing the designated evidence in the light most favorable to the Plaintiffs, they failed to designate evidence sufficient to create a genuine issue of material fact with

regard to the question of whether Hagenow negligently entrusted his vehicle to Alyssa. Accordingly, the trial court properly granted summary judgment in favor of Hagenow.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.