Teresa and Kelly ADAMS, Appellants–
Respondents

v.

MARION COUNTY OFFICE OF
FAMILY AND CHILDREN,
Appellee–Petitioner.

No. 49A05–9503–JV–108.

Court of Appeals of Indiana.

Dec. 19, 1995.

Annette Fancher Sheldon, Indianapolis, for Appellants.

Pamela Carter, Attorney General and Elizabeth Filipow, Marion County Office of Family and Children, Indianapolis, for Appellee.

## OPINION

SHARPNACK, Chief Judge.

Teresa and Kelly Adams appeal the trial court's termination of their parental rights. The Adams raise one issue for our review which we restate as whether the trial court erred in determining that the Office of Family and Children ("OFC") proved the statutory elements for termination of their parental rights. We affirm.

### FACTS

The facts most favorable to the judgment are as follows. The Adams have three daughters: A.A. (born in 1984), A.A. (born in 1986), and K.A. (born in 1989).[1] On April 23, 1990, the OFC removed the Adams' children from their home and filed a children in need of services ("CHINS") petition due to alleged sexual abuse perpetrated by their father. On January 11, 1991, the court granted the petition and found the Adams' children to be CHINS.

On February 20, 1991, the court held a dispositional hearing where the court placed K.A. with her maternal grandparents and kept the oldest daughters in foster care. The disposition plan instructed the mother, Teresa, to undergo a psychological evaluation, participate in parenting classes, and visit the children regularly according to a schedule set by the OFC. The disposition plan instructed the father, Kelly, to undergo a psychological evaluation, participate in anger control counseling, undergo a substance abuse evaluation, participate in a counseling program for sexual abuse, and satisfactorily complete the OFC's parenting classes.

On August 27, 1992, the court, under a CHINS proceeding, suspended Teresa's visitation rights with her children. The court based its decision on Teresa's inappropriate conduct in attempting to persuade her two oldest daughters to retract their allegations that their father had sexually abused them.

On February 27, 1993, after numerous placements in various foster homes, all three children were placed in the same therapeutic foster home. The foster parents expressed a desire to adopt the children if the Adams' parental rights were terminated.

On November 17, 1993, the OFC petitioned to terminate the Adams' parental rights. After a trial, the court entered an order terminating the Adams' parental rights. The Adams now appeal this decision.

### DISCUSSION

 The traditional right of parents to establish a home and raise their children is protected by the fourteenth amendment of the United States Constitution. *In the Matter of Tucker* (1991), Ind.App., 578 N.E.2d 774, 778, *trans. denied.* However, these parental rights are not absolute and must be subordinate to the child's rights in determin-

---

1. We note that the Adams also have a son who was not part of this action.

ing an appropriate disposition of a petition to terminate parental rights. *In the Matter of D.V.H.* (1992), Ind.App., 604 N.E.2d 634, 636, *trans. denied.* To effect the involuntary termination of a parent-child relationship, the OFC must prove the following elements:

"(1) The child has been removed from the parent for at least six (6) months under a dispositional decree;

(2) There is a reasonable probability that: (A) The conditions that resulted in the child's removal or the reasons for placement outside the parent's home will not be remedied; or (B) The continuation of the parent-child relationship poses a threat to the well-being of the child;

(3) Termination is in the best interests of the child; and

(4) There is a satisfactory plan for the care and treatment of the child."

Ind.Code § 31–6–5–4(c); *see also Egly v. Blackford County Department of Public Welfare* (1992), Ind., 592 N.E.2d 1232, 1234. To sustain termination, the evidentiary proof must rise to the level of clear and convincing evidence. I.C. § 31–6–7–13(a). In reviewing the termination of parental rights, we will neither reweigh the evidence nor judge the credibility of the witnesses; we will consider only the evidence that supports the judgment and reasonable inferences to be drawn from the evidence. *D.V.H.,* 604 N.E.2d at 637. The judgment may be set aside only if the findings or judgment are clearly erroneous. *Id.* A finding or judgment is clearly erroneous when there are no facts or inferences to be drawn therefrom which support it. *Indiana–Kentucky Electric Corporation v. Green* (1985), Ind.App., 476 N.E.2d 141, 143, *reh'g denied, trans. denied.*

The Adams argue the trial court erred in determining that the OFC presented clear and convincing evidence for all of the statutory elements. The Adams do not specifically challenge any of the elements of I.C. § 31–6–5–4(c), but generally challenge the State's failure to "present sufficient evidence on the elements." Appellant's brief, p. 6. The Adams contend there was insufficient evi-

dence to prove that Kelly had, in fact, molested his daughters.

The trial court found that Kelly had molested his daughters based on the CHINS decision and the subsequent dispositional hearing. In its findings of fact, the trial court stated:

"2. [The children] were found to be Children in Need of Services, after a trial, by the Order of the Marion County Superior Court, Juvenile division, dated January 11, 1991, finding the CHINS Petition true. . . .

3. [The children] were removed from their parents' care and custody and have been continued in placement out of the parents' home, due to sexual abuse of [the two oldest daughters] by their father, their mother's denial of sexual abuse and inability to protect from sexual abuse, and the refusal of mother and father to participate in or demonstrate benefit from services and counseling designed to remedy these problems, which seriously endangered the childrens' [sic] well-being. (Petitioner's Ex. 6)" [2]

Record, pp. 88–89.

The Adams' argument that there was insufficient evidence to support termination of their parental rights is based primarily upon their assertion that the sexual abuse, which formed the basis of the CHINS action, did not occur. The Adams rely on our decision in *Tipton v. Marion County Department of Public Welfare* (1994), Ind.App., 629 N.E.2d 1262. In that case, we held that the evidence in the termination proceeding was insufficient in part for the following reasons:

"The [Department of Public Welfare] did not introduce into evidence the CHINS petition, the predispositional report, the parental participation order, the modification report or any other document or order containing written findings, which was required to be created during the proceedings. Neither did the DPW ask the court to take judicial notice of the underlying CHINS proceeding. Hence, none of the

---

**2.** We note that "Petitioner's Exhibit 6" is the CHINS petition alleging sexual abuse.

record of the CHINS proceeding is before us."

*Id.* at 1266.

The Adams' reliance on *Tipton* is misplaced. Unlike the situation in *Tipton,* the OFC introduced sufficient evidence at the termination hearing. The OFC introduced the CHINS petition, the CHINS order, the predispositional report, and the dispositional order.

The State contends that we need not address the issue of whether Kelly committed sexual abuse because it is barred by the doctrine of collateral estoppel. The State argues that this issue was previously litigated and determined by the trial court in the CHINS and dispositional hearings. We agree.

■ Collateral estoppel operates to bar relitigation of the same issue where that issue was necessarily adjudicated in a former suit and the same issue is presented in the subsequent lawsuit. *Sullivan v. American Casualty Co.* (1992), Ind., 605 N.E.2d 134, 137. In this situation, the first adjudication will be held conclusive even if the second action is on a different claim. *Id.*

■ The doctrine of collateral estoppel acts to bar relitigation of an issue when the party seeking estoppel can establish:

1) a final judgment on the merits in a court of competent jurisdiction;

2) identity of the issues; and

3) the party to be estopped was a party or the privity of a party in the prior action.

*Bojrab v. John Carr Agency* (1992), Ind.App., 597 N.E.2d 376, 379.

■ The *Sullivan* court has dispensed with the additional, rigid requirements of mutuality and identity of the parties. *Id.* at 138. Rather, "the prime consideration is whether the party against whom the prior judgment is pled had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel." *Id.* at 138.

■ In the present case, the State seeks to use collateral estoppel offensively. Offen-

sive use of collateral estoppel occurs when a plaintiff seeks to foreclose the defendant from litigating an issue that the defendant has previously litigated unsuccessfully in an action with another party. *Tofany v. NBS Imaging Systems, Inc.* (1993), Ind., 616 N.E.2d 1034, 1037 (quoting *Parklane Hosiery Co. v. Shore* (1979), 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 649 n. 4, 58 L.Ed.2d 552). "[T]o the extent that a plaintiff is able to establish the traditional requirements of collateral estoppel, Indiana law has permitted that plaintiff to assert 'offensive' collateral estoppel against a defendant." *Tofany,* 616 N.E.2d at 1038.

The state argues that "it was permissible for the [OFC] to use offensive collateral estoppel to establish that the sexual molestation occurred by entering into evidence the order of the CHINS trial court which had previously determined the issue." Appellee's brief, p. 11. Consequently, the State argues that the Adams were barred during the termination trial from relitigating the issue of the sexual abuse and that they are, therefore, barred from attacking this issue on appeal.

■ The first element of collateral estoppel is the existence of a final judgment on the merits by a court of competent jurisdiction. The OFC established this element when it presented the CHINS and disposition orders into evidence. Final judgments dispose the subject matter of the litigation as to the parties so far as the court in which the action is pending has the power to dispose of it. *Matter of M.R.* (1983), Ind.App., 452 N.E.2d 1085, 1088 (quoting *In re Custody of Helwig* (1982) Ind., 442 N.E.2d 1035, 1038). In *M.R.,* we held:

"The finding of CHINS status is a mere preliminary step to be taken prior to choosing among several different dispositional alternatives. That choice finally determines the rights of the parties, especially in light of the specific guidelines set down in the dispositional hearing statute—guidelines which may prove to support a later appeal. It is after disposition that a final, appealable judgment exists...."

*M.R.,* 452 N.E.2d at 1088–89 (footnotes omitted).

On February 20, 1991, after the CHINS action, the trial court conducted a dispositional hearing and entered an order placing the children outside the Adams' home. This dispositional order was a final, appealable judgment which would have allowed an appeal challenging the CHINS determination that Kelly had molested his daughters.

The second element of collateral estoppel is the identity of the issues. Collateral estoppel includes all matters which were in issue or might have been in the former suit. *Moxley v. Indiana National Bank* (1982), Ind.App. 443 N.E.2d 374, 379, *reh'g denied, trans. denied.* The issue of whether Kelly had sexually abused his daughters was clearly litigated and determined in the CHINS and disposition hearing. The CHINS order found the petition alleging that Kelly sexually molested his daughters to be true. Based upon the determination that the Adams' children were in need of service, the trial court then ordered the Adams to participate in sexual abuse services.

The final element is whether the party to be estopped was a party in the prior action. Both Teresa and Kelly were parties in the CHINS and disposition hearing. They had a full and fair opportunity to litigate the issue of whether Kelly had molested his daughters. *See Sullivan,* 605 N.E.2d at 138. Under these circumstances, it would not be unfair to permit the use of collateral estoppel. *Id.*

We find that the Adams are collaterally estopped from arguing that Kelly had not sexually abused his daughters. The proper forum for this argument is an appeal from the disposition order. The trial court properly relied on this sexual abuse determination in forming its findings of facts and conclusions thereon. Therefore, the trial court's findings and conclusions are not clearly erroneous in this respect. *See Green,* 476 N.E.2d at 143.

Next, we must consider whether there was sufficient evidence to support each of the statutory elements of I.C. § 31–6–5–4(c). The Adams do not directly challenge any specific statutory elements, but rather,

contend the OFC failed to present sufficient evidence.[3] The Adams' contention is essentially an invitation to reweigh the evidence and reconsider the credibility of the witnesses. We cannot do so. Instead, we will consider only the evidence most favorable to the judgment in deciding whether the court's conclusions are clearly erroneous. *See D.V.H.,* 604 N.E.2d at 637.

The record reflects that the children were removed from the Adams' home because the father had abused the two oldest daughters and that there was a reasonable probability that this abuse would continue if the children were returned to the Adams' home. The record also reveals that Teresa and Kelly did not satisfactorily complete their required counseling and services. Numerous experts testified that the children would still be vulnerable to sexual abuse if returned to the Adams' home. The court found that there was reasonable probability the reason for removal and continued placement outside the Adams' home will not be remedied based on "the sexual abuse of the children, the parents' lack of treatment and counseling regarding the sexual abuse, the father's history of alcohol abuse, and the length of time the children have been placed out of the home." Record, p. 98.

The record further reflects that the Adams pose a continued threat to the children's well-being. Since neither Teresa nor Kelly completed their sexual abuse services, there is a likelihood that molestation will reoccur. Further, the children's emotional well-being would be endangered if they were placed back into the Adams' home. The trial court found:

"It would have a severe detrimental effect on the healthy development of [the children] to remove them from their current foster parents, due to the sense of security they now have there, the frequent past changes of placement, their past sexual abuse by their father and their mother's disbelief regarding the abuse."

Record, p. 98. The trial court need not wait until the children are irreversibly harmed such that their physical, mental and social

---

3. The Adams do not address the first element requiring the children be removed from the

home for at least six months before termination.

development is permanently impaired before terminating the parent-child relationship. *J.K.C. v. Fountain County Department of Public Welfare* (1984), Ind.App., 470 N.E.2d 88, 93.

In addition, there was a satisfactory plan for the care of the children. The current foster parents have expressed a desire to adopt all three children. There was also a evidence that the termination was in the best interest of the children. The trial court found that termination "would promote the healthy emotional development of the children and be in their best interest to be adopted by the current foster family, who have provided a safe, nurturing and consistent environment for the children." Record, p. 99.

We find the state proved the statutory elements of the statute by clear and convincing evidence. *See* I.C. § 31–6–7–13(a). Accordingly, the judgment was not clearly erroneous.

For the forgoing reasons, we affirm the trial court's judgment.

AFFIRMED.

RUCKER and KIRSCH, JJ., concur.