Helen C. HOLTZ, Plaintiff–Appellant,

v.

J.J.B. HILLIARD W.L. LYONS, INC., Defendant–Appellee.

No. 98–1870.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 22, 1999.

Decided July 15, 1999.

Jack N. VanStone (argued) Evansville, IN, for plaintiff–appellant.

David L. Clark (argued), Kahn, Dees, Donovan & Kahn, Evansville, IN, for defendant–appellee.

Before EASTERBROOK, KANNE, and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

When her brother Robert Ziss died, Helen Holtz was told by others that she would be the beneficiary of his individual retirement account ("IRA"). In May 1993, Ziss, however, had decided to make some changes to the mutual funds that made up this account. In response to Ziss's request, J.J.B. Hilliard W.L. Lyons, Inc. ("Hilliard Lyons"), his broker, sent him the appropriate pre-printed applications, which he filled out and returned. After Ziss's death, Holtz learned that when Ziss made these changes to the mutual funds he maintained with American Funds Services Company ("American Funds"), he had not filled in the portion of the application stating who his designated beneficiary would be. Holtz sued Hilliard Lyons, American Funds, and Capitol Guardian Trust Company ("Capitol Trust"), the trustees of the American Funds mutual funds, for negligence. After concluding that, under Indiana law, Holtz had not established that these defendants owed her brother a duty to ensure that he had filled in the designated beneficiary portion of the application so that it comported with his intentions, the district court granted summary judgment to all of the defendants. We agree with its conclusion.

## I. History

During the twenty years he maintained his retirement plan, Ziss, a physician, altered his account several times. He chose

Hilliard Lyons as his broker in 1973 when he established a Keogh retirement fund with Putnam Investment Services ("Putnam"). At that time, Putnam assumed the role of trustee for the account. Fifteen years later, Ziss converted the account into a self-directed IRA. He also changed the trustee to Delaware Guarantee & Trust Company with Hilliard Lyons's assistance. In 1992, Ziss changed the trustee on the account again also with the aid of Hilliard Lyons, who became the trustee. By this time, Ziss had structured his IRA so as to include Putnam mutual funds and American Funds mutual funds. Finally, in 1993, Ziss decided to alter the account again to "cut out the middle-man" so that he could receive his money from the account quicker. As part of this change, he named Putnam and Capitol Guardian as the trustees of the Putnam and American Funds mutual funds respectively. During all of these adjustments, except the final one, Ziss had completed the application forms for changing the trustee to designate his sister, Helen Holtz, as the beneficiary of the investments.

When Ziss decided to alter his accounts in 1993, Hilliard Lyons forwarded to him the necessary documents as he had requested. These documents were preprinted applications for American Funds and Putnam. Pamela Sue Gross, an employee of Hilliard Lyons, sent these applications to him at the same time. She typed the required information in some sections, such as his name, address, and social security number, and highlighted the portions of the two applications for which she did not know the information so that each form would be completed according to the new trustees' requirements. She attached a note instructing Ziss to fill in these sections and to return the forms to Hilliard Lyons. She did not highlight the designation of beneficiary section on the American Funds application.[1]

The American Funds application Hilliard Lyons sent to him shows that his name, address, and social security number had been typed in the appropriate locations. Hilliard Lyons had also marked the box indicating the type of IRA and filled in the dealer information section. It highlighted his date of birth, day time phone number, and signature and date portions of the application. The form demonstrates that Ziss filled in these highlighted portions and corrected a mistake made with regard to his zip code, which was located in an unhighlighted portion of the application. It is not clear who wrote in the amount of his IRA account as "100%", but Gross indicated in her deposition that anything written on the application would have been put there by Ziss. The designated beneficiary section is blank. Ziss clearly signed the application and, in doing so, acknowledged that he agreed with its Terms and Conditions, which state, in part, "[i]f no [beneficiary] designation is in effect at the time of the Participant's death, the

---

1. Holtz contends Gross did highlight the designation of beneficiary section on the Putnam application. The record contains no factual support for her contention. It does not contain the original Putnam application form, making it impossible to ascertain what, if anything, was highlighted on the application. It also lacks statements by anyone who han-dled the form as to which sections of the Putnam application had been highlighted. The basis of Holtz's conjecture that Gross highlighted the designated beneficiary section of the Putnam application appears to stem from the following logic: Ziss filled in only the portions highlighted on the American Funds application; he filled in the designated beneficiary section of the Putnam application;

therefore, Gross must have highlighted the designated beneficiary section of the Putnam application. In addition to being unsupported by factual assertions, this conclusion is based on a flawed premise as well because the original American Funds application contains a handwritten indication, assumed to be that of Ziss since Holtz does not contradict Gross's statement that anything handwritten on the application came from Ziss, as to the amount of his IRA account he wanted transferred. Because this allegation is merely a conclusory assertion unsupported by factual assertions, we will not consider it. *See Jones v. Merchants Nat'l Bank & Trust Co.,* 42 F.3d 1054, 1057–58 (7th Cir.1994).

Participant's beneficiary shall be the Participant's estate." The Terms and Conditions were explained on a separate sheet attached to the application. He returned the form to Hilliard Lyons.

When he completed the American Funds application, Ziss also completed a similar application for the Putnam mutual funds. While not identical, this application asked for information similar to that required by the American Funds application. It, too, included a designated beneficiary section for the owner of the funds to complete. On this form, Ziss designated Helen Holtz as his beneficiary.

Once Hilliard Lyons received the applications from Ziss, Gross checked each form to ensure each contained the information necessary for the trustees—American Funds and Putnam—to accept them. Both Gross and her supervisor, Nancy Gaunt, who was Ziss's broker between 1988 and 1993, stated that Gross's duty in checking the applications was "to make certain that they [were] acceptable to the trustee." Gross recalled that "as long as the documents are signature guaranteed and are acceptable to the—in this case, Putnam, and in this case, American Funds—as long as their agreement and application respectively, are acceptable to the trustee, then I [would] mail it off." Neither party disputes that American Funds and Putnam consider applications complete even if the designated beneficiary section remains blank. Because leaving this section blank is an option the customer may exercise, Gaunt explained that Gross upon seeing that the designated beneficiary section of an application had not been completed would not have done anything. If the other required sections of the application had been filled in properly, the application would be complete and, therefore, acceptable to the new trustee. Thus, once Gross checked the applications to ensure Ziss had completed the necessary sections, she forwarded them to the respective companies. The application,

once signed by Ziss, was a completed agreement.

In November 1993, Ziss died. Based on its information, American Funds and Capitol Guardian did not consider Holtz to be Ziss's beneficiary with regard to the mutual funds for which it was the trustee because Ziss had not designated her as such on the application he had completed in May. Because she was not his beneficiary, the $203,289.33 funds passed into Ziss's estate's charitable remainder trust. Rather than becoming the owner of this part of Ziss's account, Holtz receives periodic payments from the charitable remainder trust.

Holtz challenged this result in the Vanderburgh Superior Court, Probate Division in Evansville, Indiana. Holtz and Ziss's personal attorney, James M. Schwentker, asked the court to "reform" the American Funds application to reflect her brother's alleged intention to name her as beneficiary. The court did not grant their request.

Holtz, subsequently, sued Hilliard Lyons, Capitol Trust, and American Funds in federal court, alleging that they failed to exercise reasonable care during their handling of her brother's accounts. With regard to Hilliard Lyons, specifically, she claimed that as her brother's brokerage firm, it failed in its duty to exercise reasonable care by not highlighting the beneficiary section on the American Funds application and failing to ensure it had been completed. The district court concluded that the defendants did not owe such a duty to Ziss and entered summary judgment in favor of all defendants.

Holtz appeals this decision. Pursuant to Federal Rule of Appellate Procedure 42(b), however, we dismissed Holtz's appeal against Capitol Guardian and American Funds. Thus, only Hilliard Lyons remains as a defendant.

## II. Analysis

■ Before we reach the merits of Holtz's claims, we must first clarify the basis for our jurisdiction in this case.

During oral argument, we brought to the parties' attention that while they claimed diversity jurisdiction, neither had adequately established the citizenship of Hilliard Lyons. In order to establish the citizenship of a corporation, a party must establish both where it is incorporated and the location of its principal place of business. *See Lexington Ins. Co. v. Rugg & Knopp Inc.*, 165 F.3d 1087, 1089 (7th Cir. 1999). The rules of this Circuit specifically require parties in a diversity case in which any party is a corporation to submit a jurisdictional statement that "shall identify both the state of incorporation and the state in which the corporation has its principal place of business." 7th Cir. R. 28(a)(1). After explaining to Holtz and Hilliard Lyons that we would dismiss the suit for lack of jurisdiction, we permitted them ten days to amend their pleadings pursuant to 28 U.S.C. § 1653. Both Holtz and Hilliard Lyons submitted the required amendments, clarifying that Hilliard Lyons is a Kentucky corporation with its principal place of business in Louisville, Kentucky. Because Holtz is a citizen of Indiana, we are satisfied that diversity between these parties exists and proceed to the merits of this case.[2]

■ Because Holtz challenges the district court's grant of summary judgment, we review the decision *de novo*. *See Tesch v. County of Green Lake*, 157 F.3d 465, 471 (7th Cir.1998). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, we construe all facts in

the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, neither "the mere existence of some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), is sufficient to defeat such a motion.

Holtz is trying to recover damages for what she believes was negligent behavior on the part of Hilliard Lyons. Under Indiana law, to recover under a theory of negligence, she must establish: (1) Hilliard Lyons had a duty of care arising out of its relationship with Ziss or her; (2) Hilliard Lyons failed to conform its conduct to this standard of care; and (3) Hilliard Lyons's breach of this duty proximately caused injury to Ziss or Holtz. *See Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991). As a third-party, Holtz must also establish that Hilliard Lyons's alleged duty to Ziss extended to her. *See id.* at 996.

This case presents us with three issues. First, we must determine whether the doctrine of collateral estoppel bars this suit. Second, we examine whether the evidence in the record creates a material issue of fact as to whether Hilliard Lyons had or assumed a duty of care to Ziss when it highlighted only selected portions of the applications and whether it breached this duty by not highlighting the designated beneficiary section on the American Funds application and not checking to ensure Ziss had decided not to name a beneficiary for that part of his account. Finally, we consider whether Hilliard Lyons owed Holtz any duty because she was Ziss's "intend-

---

**2.** The other parties who were named in the suit, but against whom we have dismissed the claims, also satisfy the requirements for diversity jurisdiction. Capitol Guardian is a California corporation with its principal place of business in Los Angeles, California. American Funds is a California corporation with its principal place of business in Brea, California.

ed" third-party beneficiary. Because our jurisdiction rests on diversity, we consider each claim pursuant to Indiana law. *See Shirley v. Russell*, 69 F.3d 839, 843 (7th Cir.1995).

## A. Collateral Estoppel Does Not Bar Holtz's Claim

■ The issue of collateral estoppel arises in this case because of litigation that occurred when Ziss's will entered probate. Holtz petitioned the Vanderburgh Superior Court to "reform" the American Funds application to designate Holtz as the beneficiary. The court denied the petition, stating: "After reviewing the instant motions and having heard the testimony of the witnesses, the Court finds that the reformation requested in the instant petition should not be granted." The court provided no explanation of the reasons behind its decision. Hilliard Lyons claims the court in reaching this conclusion ruled that Holtz had not proved she was Ziss's intended beneficiary for the American Funds mutual funds, and, because of this ruling, she is barred from bringing her present claim.

■ Collateral estoppel precludes relitigation of issues already litigated and decided. *See Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 913 (7th Cir.1993); *see also Adams v. Marion Co. Office of Family & Children*, 659 N.E.2d 202, 205 (Ind.Ct.App. 1995). It applies to identical issues of ultimate fact that a court has determined by a final judgment between identical parties or parties in privity. *See Adams*, 659 N.E.2d at 205. Indiana courts, like the federal courts, apply the doctrine to ensure that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *see also Sullivan v. American Cas. Co.*, 605 N.E.2d 134, 137 (Ind.1992). To fall within the dominion of collateral estoppel, the issue must be litigated and decided.

The doctrine of collateral estoppel does not apply in this case. Our examination of the probate case assures us that the issue of whether Hilliard Lyons owed Ziss and Holtz a duty of care that it, in turn, breached was not litigated in that proceeding. At a high level of generality, the issue of whether Hilliard Lyons assumed a duty to ensure Ziss completed the designated beneficiary portion of the application, the issue before this Court, is distinct from the issue of whether the application should be reformed, the issue that the probate court considered. Hilliard Lyons, however, suggests that we should tighten our view of these issues with a narrower reading. It claims that the probate court, in order to reach its decision, must have decided that Holtz was not Ziss's intended beneficiary for the American Funds account. Similarly, it asserts that in reaching a conclusion about the duty issue, we must determine whether Ziss intended Holtz to be the beneficiary of that same account. Thus, under this characterization, the issues are in fact the same, and, therefore, presentation of the latter should be estopped.

■ We disagree with Hilliard Lyons's characterization of the issues. The issues are indeed different. At the probate hearing, the parties were Schwentker, who served as the personal representative of Ziss's estate, Holtz, the Chicago Art Institute, and the Honolulu Academy of Art. The latter two institutions at this point will receive the remainder of the estate upon Holtz's death. When the Chicago Art Institute and the Honolulu Academy of Art objected to Holtz's petition for reformation of the application, they contended that the document should not be reformed because it was unambiguous and there was no evidence of mutuality of mistake. While it is true that under Indiana law one element required to show mutuality of mistake is the true intention of the parties, an individual must also demonstrate that a mis-

take was made, that both parties made it, and that the written instrument does not state the true intentions of the parties. *See Estate of Reasor v. Putnam Co.*, 635 N.E.2d 153, 158 (Ind.1994); *see also Ligon Specialized Hauler, Inc. v. Hott*, 179 Ind. App. 134, 384 N.E.2d 1071, 1074–75 (1979) (quoting *Pearson v. Winfield*, 160 Ind.App. 613, 313 N.E.2d 95, 99 (1974)). The probate court did not state the grounds upon which it rested its conclusion. We do not know whether it decided that the document itself was unambiguous or whether it concluded that one or more of the elements of mutual mistake had not been established. Given that the probate court could have rested its decision on grounds other than ones based on the intent of the parties, it would be inappropriate to conclude that the issue was litigated and resolved. As such, collateral estoppel does not bar Holtz's suit because the probate court did not decide the issues presented in her negligence case against Hilliard Lyons.

## B. Hilliard Lyons Did Not Owe A Duty to Ziss

The crux of Holtz's challenge to the district court decision lies in the question of whether Hilliard Lyons owed a duty to Ziss. "Absent a duty owed to a plaintiff by the defendant, there can be no actionable negligence." *Downs v. Panhandle E. Pipeline Co.*, 694 N.E.2d 1198, 1202 (Ind.Ct.App.), *transfer denied*, 706 N.E.2d 178 (1998). She argues that Hilliard Lyons had a common law duty to ensure Ziss completed the application so that it reflected his true intentions as to the question of a designated beneficiary, or, alternatively, that it assumed such a duty by having undertaken the task of directing Ziss to complete the portions of the application by highlighting them. Hilliard Lyons takes exception to Holtz's assertion that it owed Ziss any duty that would have averted the alleged injury. A defendant may have a duty created in one of three ways—by statute, at common law, or by assuming the duty. Discerning the

existence of a duty is a question of law to be decided by the courts. *See id.* Upon examination of Indiana law, we agree with the district court that Hilliard Lyons owed no such duty to Ziss, because it neither exists at common law nor had Hilliard Lyons assumed it.

## 1. Common Law Duty

To determine whether a duty exists at common law, the Indiana Supreme Court has established a three factor balancing analysis. "[T]hree factors must be balanced, viz. (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Webb*, 575 N.E.2d at 995. Under this analysis, the district court concluded Hilliard Lyons owed no duty to Ziss. It appears that Indiana courts have not squarely addressed the duty issue presented by the facts of this case. While Hilliard Lyons may have owed Ziss other duties relating to his account, we find no reason to conclude, and Holtz points to no case law to the contrary, that Hilliard Lyons owed Ziss a duty at common law to inquire about his intentions regarding the alterations he made in his account.

Holtz contends that the relationship between Ziss and Hilliard Lyons was one of agency that gave rise to a duty to Ziss to ensure he completed the American Funds application so that it represented his intentions regarding, at least, the beneficiary designation. Under Indiana law, an agent is liable to its principal for losses sustained if it did not act in good faith or with due care. *See Medtech Corp. v. Indiana Ins. Co.*, 555 N.E.2d 844, 850 (Ind.Ct.App.1990). "Indiana has long recognized that an agent owes his or her principal a duty to exercise reasonable skill, care, and diligence in effecting the duties and obligations of the relationship." *Runde v. Vigus Realty, Inc.*, 617 N.E.2d 572, 576 (Ind.Ct.App.1993). We assume for purposes of this appeal that Hilliard

Lyons acted as Ziss's agent.[3] Holtz argues that Hilliard Lyons breached this fiduciary relationship when it did not check with Ziss to make sure he meant to leave the designation of beneficiary portion of the application blank.

Holtz's claims are somewhat similar to those presented in two cases in which we and the Indiana Court of Appeals concluded that no such duty existed based on the relationship between the two parties. In *Shearson Hayden Stone, Inc. v. Leach*, 583 F.2d 367, 371–72 (7th Cir.1978), we concluded that a customer of a brokerage firm who handled his commodity futures trading account did not have a fiduciary relationship requiring the firm to liquidate the client's account with the firm when market prices fell because the customer was a sophisticated investor who maintained a "non-supervised" or "discretionary" account with the broker. We stated that "[a]lthough in some circumstances a broker would stand in a fiduciary relationship to its customer, those circumstances are not present here. . . . [The plaintiff] made all the investment decisions. He was a sophisticated investor who did not rely on his broker for advice." *Id.* at 371.

Similarly, the Indiana Court of Appeals concluded that a customer who had an account with a bank that did not act as her financial or estate planning advisor had no duty to investigate or inquire as to her choice to transform her account into a joint account after she had completed the form to make the change. *See Gaunt v. Peoples Trust Bank*, 177 Ind.App. 285, 379 N.E.2d 495, 496–97 (1978). The court concluded that the customer's "alleged failure to understand that she was opening a joint account was not due to the breach of any duty on the bank's part." *Id.* at 497.

While the sophistication level of these individuals and the types of accounts they maintained differed from one another and from Ziss, the similarity between *Shearson*

and *Gaunt* and the case before us lies in the fact that all three individuals maintained control over their accounts and did not seek advice as to the discretionary decisions they made regarding their accounts, whether they involved decisions relating to the status of investments or the type of account maintained. The courts emphasized this aspect of their relationships with the defendants when reaching the conclusions that no duty existed in each case. Thus, at common law in Indiana there appears to be no duty to confirm clients' intentions when the clients alter their accounts if the clients maintain control over these accounts and do not seek the advice of the institutions they allege owe them a duty.

Like the plaintiffs in these cases, Ziss was in complete control of the discretionary aspects of his retirement funds account that was a self-directed IRA account for which he made his own decisions, including whether or not to designate a beneficiary on the required forms. Holtz does not present evidence that Ziss asked for advice in completing the applications, only that he requested Hilliard Lyons send the appropriate applications to his home. There is also no evidence in the record indicating that once Ziss received the applications, he sought the assistance of anyone at Hilliard Lyons. Similar to the plaintiff in *Shearson*, Ziss controlled the discretionary aspects of his account. He did not turn to Hilliard Lyons for advice or guidance. In this latest chapter of his relationship with Hilliard Lyons, he told Hilliard Lyons the changes he wanted to make. It provided him with the necessary paperwork, which he completed in his home without consulting Hilliard Lyons. As with the change of account card in *Gaunt*, the application was complete and internally consistent, even though Ziss left the designated beneficiary section blank. Thus, there was nothing to indicate to Hilliard Lyons the existence of

---

**3.** Because we conclude Hilliard Lyons did not owe the alleged duty to Ziss, we need not determine whether Hilliard Lyons was, in fact, Ziss's agent. Generally, agency is a question to be resolved by the finder of fact. *See Medtech*, 555 N.E.2d at 850.

a different intention or of a problem. As far as it knew, Ziss changed his mind and decided to remove Holtz as the beneficiary of this account.[4]

Although the plaintiff in *Shearson* may have been an overall more sophisticated investor than Ziss and the account in *Gaunt* one less likely to require financial advice, the courts in these cases focused not on the sophistication of the investor or the type of account, but rather on who controlled the accounts and whether the plaintiffs solicited advice from the institutions with whom the plaintiffs maintained their accounts. Therefore, like the defendants in *Shearson* and *Gaunt*, Hilliard Lyons, based on its relationship with Ziss did not rise to the level to create a duty at common law to investigate Ziss's choices on the completed applications.

■■■ Even if Ziss mistakenly left the designated beneficiary section blank or did not understand that leaving the section blank would make his estate the beneficiary, these acts did not result from a breach of duty on the part of Hilliard Lyons. Under Indiana law, signing a contract creates a conclusive presumption that the signer knows its contents. *See Park 100 Investors, Inc. v. Kartes*, 650 N.E.2d 347, 349 (Ind.Ct.App.1995). Hilliard Lyons did not have a duty to explain the application requirements to Ziss. Thus, Indiana law presumes Ziss read the Terms and Conditions accompanying the application that explained that leaving the designated beneficiary section blank meant his estate became the beneficiary upon his death. Therefore, the relationship of the parties does not appear to be one that required the duty Holtz alleges existed.

As to the foreseeability of harm aspect of the common law duty test, Holtz takes

issue with the district court's conclusion that businesses like Hilliard Lyons "are not in the position to foresee when their competent adult customers have failed to state their true intentions." She argues that the resulting harm to her, the alleged intended beneficiary, is "self-evident" because when Hilliard Lyons did not highlight the designated beneficiary portion of the application, it made it impossible for her to receive the benefits of the account upon her brother's death.

■■■ Indiana courts analyze this aspect of the test by focusing "on whether the person actually harmed was a foreseeable victim and whether the type of harm actually inflicted was reasonably foreseeable." *Webb*, 575 N.E.2d at 997. This inquiry is the same as that used for proximate cause, except that courts determine it as a matter of law, rather than leaving it to the fact-finder. *See Downs*, 694 N.E.2d at 1204.

It is arguable that any mistake in the section designating a beneficiary would be a reasonably foreseeable injury to Holtz because Hilliard Lyons knew that she had been the beneficiary of this part of the account on previous occasions. However, a fact-finder could also conclude otherwise. The uncontroverted evidence is that the purpose of Gross highlighting specific sections of the application was to ensure that Ziss completed the application in a manner that would be acceptable to the new trustee. Leaving the designated beneficiary section blank is an acceptable response to that section of the application to the trustee. Even with this section left blank, the application was a complete agreement. That Ziss's intentions regarding whether he wanted to specify a beneficiary for the American Funds mutual funds were not followed may not be a foreseeable injuri-

---

**4.** Although Gaunt stated in her deposition that she personally believed Ziss intended for Holtz to be his beneficiary of this part of his account, she also clearly stated Ziss had not communicated this intention to her and her belief came from the fact that Ziss had previously designated Holtz as the beneficiary.

She also stated that while she held this belief, neither she nor Hilliard Lyons knew he had not changed his mind as to this aspect of his account or that the lack of a designation was a mistake. No one realized Holtz was not the designated beneficiary until after Ziss died.

ous consequence of the failure to highlight or double-check a section that did not need to be filled in for the trustee to accept the application as complete. Hilliard Lyons did not know whether Ziss intended to remove Holtz from her long-time status as beneficiary, mistakenly forgot to fill-in the relevant portion of the application naming Holtz as the beneficiary, or mistakenly forgot to fill-in the relevant portion of the application naming someone else as the beneficiary. Ziss was not a novice with regard to his IRA account. That he maintained a self-directed IRA and historically controlled his own accounts, including changing the trustee while maintaining Holtz as his designated beneficiary on other occasions, suggests that it was unlikely he was naive about the information required by the American Funds application. His own attorney stated in an affidavit that Ziss "was a very detailed individual and generally careful about his financial matters." He did fill in the designated beneficiary portion of other forms, including the Putnam application that he completed at the same time he completed the American Funds application. Hilliard Lyons may not have been able to reasonably foresee that a customer with Ziss's experience and knowledge would not state his true intentions on the application. Thus, it is less than clear that the harm would be foreseeable.

As a final consideration in its balance of factors, the district court explained that public policy considerations weigh against recognizing a duty for brokers to inquire into the intentions of customers like Ziss. We agree that the creation of such a duty would be unduly paternalistic and cause unnecessary delay in the completion of transactions. Under the facts of this case, Ziss chose to engage in financial planning in a manner that permitted him to control his own investments without the advice of others. With this strategy he gained autonomy, but also risked making mistakes that a less autonomous investor might have avoided with the advice of a broker. Simply because the assumption of this risk

may have resulted in his intended designated beneficiary not obtaining her benefits, we do not feel compelled to create a new duty to protect those investors, like Ziss, who have emphatically stated by not choosing to cede control of their accounts that they do not desire such protections.

 In addition, duties should rest upon the least-cost avoider. *See Edwards v. Honeywell, Inc.*, 50 F.3d 484, 490 (7th Cir.1995). Under these facts, Ziss was in the best position to ensure that the application accurately reflected his intentions. Placing a duty on Hilliard Lyons to confirm his desires would diminish the incentives of future "Zisses" to check their applications on their own. The liability resulting from placing such a duty on the party who is not the least-cost avoider would expose that party to an almost incomprehensible number of claims in which a variety of plaintiffs—related and unrelated to defendants—allege the duty was breached because this particular plaintiff was supposed to be designated the beneficiary or, conversely, the owner of the account really meant for no one to be designated. The creation of such a duty is simply too unwieldy. Thus, we agree that the public policy considerations counsel against establishing a duty to inquire into every customer's intentions.

Therefore, we conclude that the district court properly determined, after balancing the relationship between Ziss and Hilliard Lyons, the foreseeability of this particular harm to Ziss, and public policy considerations, that no common law duty exists under Indiana law to require Hilliard Lyons to double-check Ziss's application or inquire further into his intentions regarding his beneficiary.

### 2. Assumption of Duty

 Holtz emphasizes that even if no common law duty exists, Hilliard Lyons assumed a duty to ensure that the applications were properly completed when it

highlighted certain portions of the applications, directed Ziss to complete those portions, and checked the applications upon their return to ensure that he had. The district court seemed to find implicitly that Hilliard Lyons did not assume a duty. While the issue of whether a defendant has assumed a duty generally rests with the trier of fact, *see Johnson v. Owens*, 639 N.E.2d 1016, 1019 (Ind.Ct.App.1994), if no facts or reasonable inferences in the record create material issues of genuine fact, the question can be determined by law. *See Van Duyn v. Cook–Teague Partnership*, 694 N.E.2d 779, 781 (Ind.Ct.App. 1998), *reh'g denied*, (Oct. 1, 1998), *transfer denied*, (Feb. 18, 1999).

■ Indiana courts adhere to Justice Cardozo's musing on this subject: "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Ember v. B.F.D., Inc.*, 490 N.E.2d 764, 769 (Ind.Ct.App. 1986), *modified on other grounds*, 521 N.E.2d 981 (Ind.Ct.App.1988) (quoting *H.R. Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 159 N.E. 896, 898 (1928)) (quoting *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275, 276 (1922)). In essence, then, "a duty may be imposed upon one who by affirmative conduct . . . assumes to act, even gratuitously, for another to exercise care and skill in what he has undertaken." *Lather v. Berg*, 519 N.E.2d 755, 766 (Ind.Ct.App.1988) (quoting *Board of Comm'rs v. Hatton*, 427 N.E.2d 696, 699 (Ind.Ct.App.1981)). The defendant "must have specifically and deliberately undertaken the duty which he is charged with having done negligently." *Medtech*, 555 N.E.2d at 849. In addition, "[i]t is also important that the party on whose behalf the duty is being undertaken relinquish control of the obligation; the party who adopts the duty must be acting 'in lieu of the original party." *Id.* "A defendant cannot be bound by a duty based upon a custom and practice that exists not in real-ity but only in the mind of the plaintiff." *Van Duyn*, 694 N.E.2d at 782.

■ In determining whether a defendant has assumed a duty, Indiana courts apply a three part test. *See Roe v. Sewell*, 128 F.3d 1098, 1104 (7th Cir.1997). First, there must be a promise or some other conduct indicating that the defendant assumed a duty to undertake the action. *See id.* Second, the defendant must have done so with knowledge that the other party would rely on the promise to act. *See id.* The third aspect of the test is divided between misfeasance cases and nonmisfeasance cases. If the case falls into the former category, there must be affirmative conduct by the actor. In the latter case, there must be detrimental reliance by the beneficiary or an increased risk of harm due to the failure to act. *See id.* The assumption of a duty creates a special relationship between the parties, and the failure to act in a reasonable manner in relation to this duty may result in negligence. *See Plan–Tec, Inc. v. Wiggins*, 443 N.E.2d 1212, 1219 (Ind.Ct.App. 1983).

Holtz contends that because Gross highlighted certain portions of the application, instructed Ziss to complete these portions, and verified that he had done so once Ziss returned the applications to the office, Hilliard Lyons assumed a duty to ensure that Ziss had completed the application to match his intentions regarding his choice of a designated beneficiary. She believes evidence in the record creates a material issue of fact as to this issue, which means that a jury should determine whether Hilliard Lyons in fact assumed such a duty. After reviewing the facts, we find no issues of material fact exist between the parties, and, therefore, the issue is properly presented as one of law.

Hilliard Lyons does not contest that Gross highlighted selected portions of the American Funds application. Nor does it disagree with Holtz's assertion that Gross instructed Ziss to provide the information required in these sections and return the

applications to Hilliard Lyons. It also does not dispute that Gross checked the applications once she received them to ensure Ziss had provided the information requested. What it does disagree with, is the conclusion Holtz believes can be drawn from these facts, which is namely that Hilliard Lyons assumed a duty that required it to highlight the designated beneficiary section or, at least, double-check with Ziss to confirm that he intended to leave it blank. Neither the facts nor reasonable inferences that could be drawn from them, even when viewed in the light most favorable to Holtz, support her contention that Hilliard Lyons assumed such a duty.

■ Holtz does not present evidence demonstrating that Hilliard Lyons by promise or act assumed a duty to confirm Ziss's choice regarding his beneficiary. Indiana courts have not confronted facts similar to those before us. In addition, most of the case law dealing with whether a defendant has assumed a duty toward a specific defendant condenses the three-part test into a less rigidly defined, highly fact-specific analysis. In line with this approach, we synthesized the following factors that Indiana courts emphasize in their analysis. When examining whether a defendant has assumed a particular duty, Indiana courts often approach the question by determining which party remained in control of the situation in which the alleged duty supposedly arose. *See Tincher v. Greencastle Fed. Sav. Bank*, 580 N.E.2d 268, 273–74 (Ind.Ct.App.1991). The courts also take note of whether the acts in question demonstrate in themselves a decision to perform the alleged duty. *See Plan–Tec*, 443 N.E.2d at 1220. Finally, Indiana courts have noted that assurances made by a defendant may constitute evidence of the assumption of an alleged duty. *See Town & Country Mut. Ins. Co. v. Savage*, 421 N.E.2d 704, 707–08 (Ind.Ct.App.1981).

When examining assumption of duty cases, Indiana courts have found such a duty exists when a defendant controls the instrumentality over which the question of an alleged duty arises. For example, in *Wright v. Pennamped*, 657 N.E.2d 1223, 1231 (Ind.Ct.App.1995), *aff'd. on reh'g*, 664 N.E.2d 394 (Ind.Ct.App.1996), the court of appeals held that an attorney who drafted a loan document and solicited comments about the draft had assumed a duty to disclose any changes he made while drafting and incorporating the comments. In *Tincher*, 580 N.E.2d at 273–74, the court of appeals held that evidence supported the inference that a bank assumed a duty to obtain adequate insurance because it exercised control over the maintenance of the insurance policy. Because the defendants in these cases obtained control, the court found that they had assumed a duty to exercise reasonable care as to the things—the loan documents and the maintenance of insurance—they controlled. In *Lather*, 519 N.E.2d at 766–67, the court of appeals, however, concluded that the plaintiffs had not assumed a duty to keep an impaired driver from driving even though they had taken his car keys and tried to restrain him because the driver had an extra set of keys and, importantly, maintained control over the car during the entire incident. Thus, if a plaintiff has control over the instrumentality, the defendants have not assumed a duty to act with reasonable care despite their intervention so long as the act did not result in the plaintiff relinquishing control.

While none of these cases is directly on point, the situation presented to us is more like that of *Lather* than that of *Wright* or *Tincher* because Ziss maintained control over his account at all times, just as the plaintiff in *Lather* maintained control over his car throughout the encounter with defendants. Although Ziss requested that Hilliard Lyons send the necessary application forms to his home so that he could make the changes to his account, no evidence in the record establishes that Ziss requested or Hilliard Lyons promised that Hilliard Lyons act as an advisor or take control of his account. There is no evi-

dence Ziss informed Hilliard Lyons of his wishes regarding his beneficiary once he decided to make changes in his account. Although by typing information required by some sections of the application and highlighting other sections, Hilliard Lyons may have assumed an obligation to ensure the forms were completed so they would be accepted by the new trustees, the evidence does not demonstrate that this obligation extended to the choice of beneficiary, a decision over which Ziss maintained control. Hilliard Lyons did not draft the application, nor did it solicit information about his choice of beneficiary from him. While the evidence demonstrates that Hilliard Lyons did assume the duty to supply Ziss with the correct forms and ensure he filled in the sections required by the trustees to be completed, it does not show that Ziss asked or Hilliard Lyons volunteered to confirm that the form expressed his intentions regarding the beneficiary of the account. His history with Hilliard Lyons demonstrates he controlled his account and did not seek advice from Hilliard Lyons. No evidence in the record contradicts these facts. Hilliard Lyons's actions are more like those of the defendants in *Lather*. While Hilliard Lyons intervened in some way, it did not act so as to obtain control over the discretionary decisions related to Ziss's account. Simply put, no evidence indicates that Ziss relinquished his right to choose a beneficiary for the American Funds mutual funds to Hilliard Lyons or ask them in any way to assist in this type of a decision or in relaying it to the new trustee.

Holtz emphasizes the decision in *Medtech*, urging us to find that case comparable to the one she presents to us. In *Medtech*, the Indiana Court of Appeals concluded that when a plaintiff presented evidence suggesting the defendant who prepared a property loss notice and assured the plaintiff that the notice would be sufficient to preserve the plaintiff's potential loss of inventory claim under an insurance policy, sufficient evidence existed that would enable a fact-finder to conclude that the defendant had undertaken a duty to ensure the claim was actually preserved. *See* 555 N.E.2d at 849. Holtz's presentation of evidence, however, differs from that of the plaintiff in *Medtech*. She has not presented sufficient factual support for her assertion that Hilliard Lyons assumed a duty. There is no evidence in the record indicating that Hilliard Lyons assured Ziss that once completed, the application would accomplish goals, such as designating Holtz as a beneficiary, other than the rollover of his American Funds mutual funds and the change of trustee. Thus, unlike the court in *Medtech*, we find no evidence that could lead a fact-finder to conclude that Hilliard Lyons had undertaken a duty to ensure the application conformed with Ziss's intentions regarding aspects of the mutual funds about which he had not communicated to Hilliard Lyons.

Indiana courts also examine the specific activities in which defendants engage to determine whether the acts themselves indicate the defendants have assumed a particular duty with regard to plaintiffs. In *Plan–Tec, Inc.*, 443 N.E.2d at 1220, the Court of Appeals held that evidence showing that a construction manager had hired a safety director, held safety meetings, ordered safety precautions, and conducted safety inspections presented sufficient evidence to require a fact-finder to determine whether he had assumed a duty to provide a safe workplace. *See also, Perry v. Northern Indiana Pub. Srv. Co.*, 433 N.E.2d 44, 49–50 (Ind.Ct.App.1982). In *Nalls v. Blank*, 571 N.E.2d 1321, 1322–23 (Ind.Ct.App.1991), the court of appeals reversed the trial court's entry of summary judgment because it found that the fact that a landlord had provided self-locking, self-closing steel doors at an apartment building's exterior entrances and floor entrances constituted sufficient evidence that a fact-finder could reasonably infer that the landlord had assumed a duty to provide security to its tenants protecting them against attacks by third-parties. The fact that a landlord provided an identification

card, which would periodically be checked by landlord's employees, evidenced only that landlord intended to protect tenant from non-resident third-party attacks also created a triable issue of material fact as to whether the landlord assumed a duty. *See Vertucci v. NHP Management Co.,* 701 N.E.2d 604, 608 (Ind.Ct.App.1998). In *Ember,* 490 N.E.2d at 770–71, a bar advertised it would provide police officers to protect the surrounding area and even stated that if individuals were having trouble they should seek help at the bar. The court reasoned that these facts supported a reasonable inference that the bar had assumed a duty to patrol and protect the area surrounding its premises and protect individuals within that vicinity from criminal activity. *See id.* In each of these cases, the court examined the facts and concluded that the acts of the defendants demonstrated that a jury could reasonably find that the defendants had assumed a duty.

Indiana courts, however, have also examined a defendant's actions and concluded that the actions did not give rise to the duty alleged by the plaintiff. In *Johnson,* the court of appeals concluded that a car dealer who checked licenses of potential buyers did not assume a duty to ensure that those who purchased cars from him were licensed drivers. *See* 639 N.E.2d at 1020. Because the car dealer stated that the purpose of the license check was to verify a current address and to assist him in collection efforts if necessary, the court concluded that the car dealer had not assumed a duty to ensure the potential purchaser had a right to drive because of a recognized importance of protecting the public from the operation of vehicles by unlicensed drivers. *See id.* at 1020.

The situation presented by Holtz is more like that of the plaintiff in *Johnson* than those described in the other cases. In the case at bar, Hilliard Lyons highlighted selected portions of the application to ensure the new trustee did not reject it; it did not do so to ensure that the application adequately communicated all of Ziss's intentions regarding the mutual funds. Holtz does not provide evidence contradicting either Gaunt or Gross's statements regarding the purpose of the highlighting. Like the plaintiff in *Johnson,* Holtz provides no evidence to the contrary, but rather, merely asserts that the purpose must be otherwise. Her contention is simply not sufficient to establish the existence of a material issue of fact or a reasonable inference of an assumed duty.

In addition to the factual differences, the general situations presented in the cases in which Indiana courts have found the question should go to a jury differ from those presented by Holtz. While the acts that each defendant undertook in these cases directly relate to the safety of the plaintiffs, the acts undertaken by Hilliard Lyons only relate to the correct completion of the application, not whether Ziss recorded his intentions about discretionary matters appropriately on the applications. Holtz directs our attention to Gross's act of highlighting only certain portions of the American Funds application and reviewing only those portions when Ziss returned the application to Hilliard Lyons. For us to reach a conclusion similar to those reached by the Indiana court of appeals in *Plan-Tec, Nalls,* and *Vertucci,* Holtz would need to point us to evidence that connects the highlighting and the duty she alleges Hilliard Lyons assumed. While the evidence presented could lead a reasonable jury to infer that Hilliard Lyons assumed a duty to ensure that the application form was complete as to the basic information required by the trustees, such as name, address, type of account, and social security number, it does not permit the inference that Hilliard Lyons rose above that duty and chose to ensure that Ziss's stated intentions with regard to discretionary sections of the form, such as that communicated by the blank designated beneficiary section, were indeed his true intentions. The provision of safety or security measures leads to an inference that the compa-

ny or person providing them does so to protect those to whom they apply. Highlighting sections, which must be filled in for the form to be complete, of an application requested by a knowledgeable investor who has not asked for advice, but only a form, does not create an inference that the broker providing the form acted so as to have assumed a duty that it would ensure the form comported with discretionary decisions made by Ziss without its assistance. Ziss did not hire Hilliard Lyons to advise him. Notably, he corrected a mistake in a section that had not been highlighted. While completing the American Funds application, he simultaneously filled in the designated beneficiary section on a similar application for Putnam. These actions undertaken by Ziss, coupled with the nature of his relationship with Hilliard Lyons and their acknowledged duty to ensure he completed the form to meet the requirements of the trustees, demonstrate that this situation differs from those in which Indiana courts have concluded the question should be decided by a jury.

Assurances made by defendants also may serve as evidence they assumed a specific duty toward plaintiffs. If a defendant assures a plaintiff he will provide a service, he has assumed a duty to do so. See Town & Country, 421 N.E.2d at 707–08. For example, in Village Furniture, Inc. v. Associated Ins. Managers, Inc., 541 N.E.2d 306, 308 (Ind.Ct.App.1989), an insurer who made oral representations about a policy had a duty to honor these oral representations even though the policy did not reflect them, and the court held these assurances created a question of fact, making summary judgment inappropriate. Holtz presents no evidence that Hilliard Lyons made any oral assurance to Ziss that it would ensure the applications conformed with all of his intentions.

Applying the three-part test outlined by the Indiana courts also demonstrates, perhaps in a less subtle manner, that Holtz has not presented evidence sufficient to demonstrate that Hilliard Lyons assumed the alleged duty. Holtz does not provide evidence that Ziss relied on Hilliard Lyons's act of highlighting the applications to ensure that the American Funds application properly accounted for his choice of beneficiary. The uncontroverted facts in the record demonstrate that Ziss requested Hilliard Lyons to provide him with the appropriate applications to make the alterations he specified in his account. No mention is made as to whether Ziss communicated to Hilliard Lyons his wishes regarding a designated beneficiary. The record shows that Hilliard Lyons chose to highlight only certain portions of the applications and mailed them with instructions to fill out these sections to his home. Without asking for advice, Ziss completed the applications. On the Putnam application, the original of which is not in the record, he wrote that Holtz should be the beneficiary. On the American Funds application, he wrote in the amount of the IRA to be transferred, corrected his address, filled in the highlighted sections, and did not designate a beneficiary. He signed both applications. By signing the American Funds application, he acknowledged reading the attached Terms and Conditions, which stated that by not filling in the designated beneficiary section, the funds would go to his estate. Holtz does not present evidence that Ziss relied upon Hilliard Lyons highlighting the application sections. She does not assert that Ziss told Hilliard Lyons that Holtz was to remain the beneficiary of this fund. She presents Ziss's attorney's affidavit in which he states that Ziss told him before Ziss's death that Holtz would receive "everything at Hilliard Lyons." There is no date as to when Ziss made this statement. If he said it before he made the changes to his accounts in May 1993, there is no other evidence to support an inference that this desire remained constant. If he said it after he made the changes, Hilliard Lyons was no longer trustee of the American Funds mutual funds. In addition, the fact that Ziss corrected the unhighlighted ad-

dress section and added information to another unhighlighted section, persuades us not to infer the existence of a duty or Ziss's reliance upon the highlighting to convey to him the only sections that needed his attention from the fact that Hilliard Lyons highlighted certain portions of the form. The application, as completed and signed by Ziss and returned to Hilliard Lyons, is a completed agreement. Holtz did not present evidence that Ziss relied upon Hilliard Lyons to highlight all of the sections of the application he might want to fill out or upon Hilliard Lyons to check with him to ensure the application conformed completely with his wishes. These facts do not establish that Ziss relied upon the actions of Hilliard Lyons such that a duty to highlight the designated beneficiary section or to double check his response in that section.

While we are sympathetic to the notion that by highlighting portions of the American Funds application Hilliard Lyons may have assumed a duty to Ziss such as that claimed by Holtz, the lack of evidence in the record prevents us from reaching the conclusion she desires. Based on the evidence, we are compelled to conclude that because she has not demonstrated that Ziss relied upon Hilliard Lyons, based upon its actions or that Hilliard Lyons knew he relied upon its actions, we find that Hilliard Lyons did not assume a duty to ensure the completed form comported with Ziss's intentions regarding discretionary aspects of his account that he controlled. Because we conclude Hilliard Lyons owed no duty to Ziss in this regard, we need not consider whether it would be extended to Holtz.

### C. Hilliard Lyons Did Not Owe a Duty to Holtz

Finally, we consider Holtz's claim that Hilliard Lyons owed her a duty as Ziss's "intended" beneficiary. Under Indiana law, the concept of duty is grounded on the premise of privity of contract. *See Webb*, 575 N.E.2d at 995–96. Thus,

for a duty to exist at common law, a contractual or special relationship must exist between the parties. *Id.* Privity, however, is not required in a few specified circumstances, such as when there is imminent danger to human life, there is an imminently dangerous product, or the defendant has knowledge of the danger. *See id.* In addition, the Indiana courts have concluded that a duty may be imposed without privity if a defendant is a professional and had actual knowledge that a third person was relying on his rendering of professional services. *See id.* at 996.

This case falls within the latter exceptions. Importantly, Holtz admitted in her deposition that she did not know Ziss had ever designated her as the beneficiary of his IRA. It is difficult for us to conclude, then, that Holtz somehow relied upon Hilliard Lyons's performance of its professional duties when she did not know their acts could affect her. Even if we assume she had relied upon Hilliard Lyons, however, another problem for Holtz arises from the fact that while employees at Hilliard Lyons, specifically Gaunt, might have suspected that Ziss intended her to be the beneficiary, they clearly stated that they did not *know* that Ziss intended her to be the beneficiary of the American Funds mutual funds and mistakenly, or for whatever reason, did not designate her as such on the application when he changed trustees. And, Holtz does not present contrary evidence indicating Hilliard Lyons did know of Ziss's alleged intention to name her as the beneficiary. Holtz has not established with evidence in the record that she was Ziss's intended beneficiary *at the time he changed the status of his account.* The fact that she had always been the beneficiary and remained the beneficiary with regard to the Putnam account does not mean Ziss did not change his mind as to the designation of his beneficiary of the American Funds mutual funds. Gaunt's own statements and those attributed to her by Ziss's personal attorney merely indicate that she believed Ziss intended for

Holtz to be the beneficiary of the American Funds mutual funds as well; they do not indicate that she *knew* this was his intent when Ziss altered this part of his account. Holtz presents no evidence that Ziss talked with Gaunt or any other Hilliard Lyons employee about his choice. Their beliefs do not rise to the level of knowledge required to invoke a duty. At her deposition, Holtz stated that she did not know of Ziss's alleged intent to designate her as his beneficiary until Schwentker told her, after Ziss's death, about the prior accounts on which Ziss had designated her as his beneficiary. While Holtz emphasizes that Ziss told his attorney that she would be the beneficiary of his account with Hilliard Lyons, Holtz does not indicate that Hilliard Lyons knew of this statement or Ziss's intent.

Holtz points us to *Walker v. Lawson*, 526 N.E.2d 968, 968 (Ind.1988), in which the Indiana Supreme Court affirmed that "an action will lie by a beneficiary under a will against the attorney who drafted that will on the basis that the beneficiary is a known third party." Apparently, her argument is that under *Walker*, we should find a duty because she was the beneficiary before Ziss changed the trustee of the American Funds account and Hilliard Lyons knew of her status as such. The logic that Holtz wants us to adopt is that because Hilliard Lyons knew of her position as the previous beneficiary, it should have ensured that any change to that position was truly intended by Ziss. As the district court explained, Indiana courts have been reluctant to expand this concept beyond the facts in *Walker*. In *Essex v. Ryan*, for example, the court specifically declined to extend this carve out to the privity requirement in *Walker* into the context of the duty a surveyor of real estate owes to remote purchasers with whom the surveyor had no contractual relationship. *See* 446 N.E.2d 368, 372 (Ind. Ct.App.1983). In addition, the court clearly refused to adopt the Restatement (Second) on Torts broadening the scope of liability beyond Indiana case law's reliance on privity. *See id.* In *Hermann v. Frey*, 537 N.E.2d 529, 531 (Ind.Ct.App.1989), the court narrowly stated the rule of *Walker* as abolishing the privity requirement "in suits against *attorneys* by third-party beneficiaries." (emphasis added). As a federal court, we are reluctant to expand the law of a state in a manner that, while perhaps logical, is not clearly in line with the state's existing thinking on the subject.

We, like the Indiana courts, *see Essex*, 446 N.E.2d at 373, heed Justice Cardozo's warning offered more than sixty years ago:

> If liability for negligence exists, a thoughtless slip or blunder ... may expose [professionals] to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of business conducted on these terms are so extreme as to enkindle doubt whether a flaw may exist in the implication of a duty that exposes to these consequences.

*Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441, 444 (1931); *compare Toro Co. v. Krouse, Kern & Co., Inc.*, 827 F.2d 155, 160–62 (7th Cir.1987) (concluding that because an Indiana court of appeals had applied the *Ultramares* standard in *Essex*, it was appropriate to apply that standard to the facts present in this case) *with First Community Bank and Trust v. Kelley, Hardesty, Smith and Co., Inc.*, 663 N.E.2d 218, 223–24 (Ind.Ct.App.1996) (stating that Indiana courts have adapted, but not adopted, the *Ultramares* standard to determine liability for negligence to noncontractual parties, at least in the context of accountants).

If we determined that Hilliard Lyons should have known Ziss intended for Holtz to be the beneficiary, an assumption we cannot assert with confidence, we would be opening the floodgates of litigation in this area. Under such an expansive theory as Holtz seems to be suggesting, anyone who had at one point been named a beneficiary, or perhaps even only been considered by the designator to be named as one, could

sue a broker who knew of the designation or potential designation and did not double-check, or maybe triple-check, that if the designator left the designated beneficiary section of an application blank he or she meant for it to be blank. Taken one step further, this system could force brokers to doubt their clients' statements entirely, requiring them to confirm on a continuing basis each client's intent as to any discretionary choice. While some brokers may elect to engage in this exercise and some clients may ask their brokers for such services, creating a legal duty of this nature is going too far. If Holtz had presented evidence that Hilliard Lyons knew or Ziss had communicated to Hilliard Lyons independent of the application that he intended Holtz to remain his beneficiary for the American Funds mutual funds when he made changes to that part of his account, we would face a different set of facts under which an expansion of *Walker* might be applicable. But, no such facts exist in the record, and we are unwilling to expand *Walker* based on the evidence before us.

Thus, because she was neither in privity nor able to present evidence that Hilliard Lyons knew she relied upon their actions with regard to the completion of the designated beneficiary portion of the American Funds application, Hilliard Lyons owed no duty to Holtz as Ziss's "intended" beneficiary.

### III. Conclusion

Thus, while we conclude that the doctrine of collateral estoppel does not bar Holtz from raising her claims against Hilliard Lyons, we do not find evidence in the record creating issues of material fact with regard to whether Hilliard Lyons owed a duty to Ziss or, by extension, to Holtz to ensure that he had filled in the designated beneficiary section of the American Funds application. When examining the undisputed evidence, we agree with the district court that Hilliard Lyons did not owe any such duty to Ziss or Holtz and, therefore, AFFIRM the district court's decision.